ALAN G. BUCKLEY et al., Plaintiffs, v. CHICAGO BOARD OPTIONS EXCHANGE, INC., Defendant-Appellee.—(Board of Trade of the City of Chicago, Plaintiff-Appellant.)

First District (5th Division)   No. 81—1100

Opinion filed September 17, 1982.

Kirkland & Ellis, of Chicago (John E. Angle and Frederick L. White, of counsel), for appellant.

Schiff, Hardin & Waite, of Chicago (Alfred Elliott, Walter C. Greenough, and Timothy L. Porter, of counsel), for appellee.

JUSTICE MEJDA delivered the opinion of the court:

The Board of Trade of the City of Chicago and Alan G. Buckley, one of its members, brought an action against the Chicago Board Options Exchange seeking *mandamus*, specific performance, injunctive and other relief. Upon defendant's section 48 motion, the trial court dismissed the four-count amended complaint. The Board of Trade appeals from the dismissal of count IV of its complaint. The issues raised on appeal are: (1) whether the court has subject matter jurisdiction in this case; (2) whether the application of Illinois common law is preempted by the Securities Exchange Act of 1934 (15 U.S.C. sec.

78a *et seq.* (1976) (the Act); and (3) whether the Board of Trade has standing to sue the Chicago Board Options Exchange.

Plaintiff Board of Trade is a commodity exchange and member corporation chartered by an act of the Illinois legislature in 1859. Defendant Chicago Board Options Exchange (CBOE) is also a membership corporation organized in 1972 under the law of Delaware, for the purpose of maintaining a regulated market for transactions in securities options. Defendant CBOE is registered as a national securities exchange with the Securities and Exchange Commission (Commission).

The Board of Trade and its members were instrumental in organizing and developing the CBOE. In recognition of those efforts the CBOE included in article 5(b) of its certificate of incorporation a special provision conferring membership in the CBOE on Board of Trade members. Article 5(b) reads in pertinent part:

> "In recognition of the special contribution made to the organization and development of the Corporation by the members of the Board of Trade of the City of Chicago, a corporation organized and existing by Special Legislative Charter of the General Assembly of the State of Illinois; *** *every present and future member of said Board of Trade* who applies for membership in the Corporation and who otherwise qualifies shall, *so long as he remains a member of said Board of Trade,* be entitled to be a member of the Corporation notwithstanding any such limitation on the number of members and without the necessity of acquiring such membership for consideration or value from the Corporation, its members or elsewhere ***." (Emphasis added.)

The practical effect of article 5(b) is to allow a Board of Trade member to acquire membership in the CBOE without payment of the usual acquisition price to the CBOE.

Alan G. Buckley has been a member of the Board of Trade since 1972 and a CBOE member since January 1973. In the fall of 1979 the Board of Trade adopted a rule (Rule 221) which allowed each member to delegate the rights and privileges of his Board of Trade membership to another for a fee. A Board of Trade member who delegates these membership rights remains a member of the Board of Trade.

On February 22, 1980, Buckley delegated his Board of Trade membership to David L. Hard for one year. On June 5, 1980, the CBOE advised Buckley by letter that his membership on the CBOE was terminated so long as the delegation of his Board of Trade membership rights remained in effect. The CBOE recognized Buckley's

delegate Hard as the Board of Trade member entitled to CBOE membership under article 5(b). On June 17, 1980, another Board of Trade member received a similar letter.

On July 7, 1980, Buckley and the Board of Trade filed a four-count amended complaint challenging the CBOE action. The pertinent allegations of the complaint follow.

Count I alleged that even though Buckley exercised his right to delegate his Board of Trade floor trading privileges, he was still a member of the Board of Trade and, thus, under CBOE's article 5(b) was entitled to retain his membership in the CBOE. Count I sought a writ of *mandamus* directing the CBOE to restore Buckley to membership in the CBOE or, alternatively, injunctive relief restoring him to membership.

Count II and by reallegation count III alleged that the CBOE did not comply with its own rules regarding expulsion when it terminated Buckley's membership. Count II also sought *mandamus* or alternatively injunctive relief. Count III sought damages.

Count IV realleged the allegations of count I and further alleged that the CBOE and the Board of Trade entered into a contract when CBOE was incorporated in 1972, reduced to writing as article 5(b) of the CBOE's Certificate of Incorporation, granting membership in the CBOE to Board of Trade members in consideration of the Board of Trade's assistance to the CBOE, that CBOE breached the contract by expelling Buckley, and that the Board of Trade has at all times fully performed all of its obligations under the contract. Count IV sought specific performance of the contract by the reinstatement of Buckley to CBOE membership. After filing an answer to the amended complaint, the CBOE filed a "MOTION TO DISMISS OR FOR SUMMARY JUDGMENT." CBOE's counsel advised the trial court that he was submitting the motion pursuant to section 48 (Ill. Rev. Stat. 1979, ch. 110, par. 48). The motion sought dismissal of the complaint on the grounds that the court lacked jurisdiction over the subject matter of the complaint; that there was a failure to exhaust administrative remedies provided by Federal law; that the State common law action was preempted by Federal law; and that plaintiffs had an adequate remedy at law.

The court determined that it had jurisdiction. It found that article 5(b) was a rule of a national securities exchange subject to Federal law, that Buckley did not pursue his remedies under CBOE rules, and that the State law action was preempted by Federal law and dismissed counts I, II and III. The court dismissed count IV because (a) the Board of Trade was "not an essential party to this case," (b) the

complaint failed to demonstrate how the Board of Trade was harmed, and (c) the complaint failed to state a cause of action upon which relief could be granted.

Only the dismissal of count IV is at issue, as Buckley has not appealed.

OPINION

■ The CBOE asserted in its motion to dismiss that the trial court lacked subject matter jurisdiction in this case. The trial court determined that it did have subject matter jurisdiction but dismissed the complaint on other grounds. The lack of subject matter jurisdiction renders a judgment void and open to collateral attack. (*Johnston v. City of Bloomington* (1979), 77 Ill. 2d 108, 112, 395 N.E.2d 549, 550.) It is the obligation of the reviewing court to take notice of matters which go to the jurisdiction of the circuit court, and accordingly we address this issue. *Eastern v. Canty* (1979), 75 Ill. 2d 566, 570, 389 N.E.2d 1160, 1162.

CBOE contends that the instant claim arises under the Act and hence is subject to the exclusive jurisdiction granted the Federal courts by section 27 of the Act. (15 U.S.C. sec. 78aa (1976).) That section provides in pertinent part:

"Jurisdiction of offenses and suits

The district courts of the United States, *** shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder ***." (15 U.S.C. sec. 78aa (1976).)

CBOE argues correctly that its certificate of incorporation is an exchange rule for purposes of the Act (15 U.S.C. sec. 78c(a)(27) (1976)) and the Act requires the CBOE to comply with its own rules. (15 U.S.C. sec. 78s(g)(1) (1976).) Thus, CBOE asserts the Board has pleaded a violation of the Act by pleading the CBOE violated its certificate of incorporation.

The Board of Trade counters that it is not bringing an action pursuant to the Act but a common law contract action, and as a plaintiff it has an absolute right to choose the law upon which it relies.

■ We find no merit to the CBOE's jurisdictional argument. It has been held that the exclusive jurisdiction provided under section 27 does not bar plaintiff from pursuing at his option remedies based solely on State law, even though the action may be based on the same factual circumstances. (*McMahon Chevrolet, Inc. v. Davis* (S.D. Tex.

1975), 392 F. Supp. 322; see *Ninth Federal Savings & Loan Association v. First Federal Savings & Loan Association* (S.D.N.Y. 1980), 493 F. Supp. 981; see *McGough v. First Arlington National Bank* (7th Cir. 1975), 519 F.2d 552; see also *Will v. Calvert Fire Insurance Co.* (1978), 437 U.S. 655, 57 L. Ed. 2d 504, 98 S. Ct. 2552, *on remand* (7th Cir. 1978), 586 F.2d 12.) Therefore, if count IV of the complaint states an action based upon a contract, the State court has the jurisdiction to entertain it, irrespective of section 27.

CBOE further argues that the Board of Trade's action is pre-empted by the Act which provides a comprehensive framework for the regulation of national securities exchanges and their rules including review by the Commission of denial of membership. The Board of Trade argues that the doctrine of preemption is not applicable here because this is strictly a garden variety common law contract action, pointing out that paragraph 13 of the stipulated facts provides that the only material issue is the meaning of the term "member" as used in article 5(b).

■ The doctrine of preemption is derived from the supremacy clause of article VI of the United States Constitution. The underlying rationale of the preemption doctrine is that the supremacy clause invalidates State laws that " 'interfere with or are contrary to, the laws of congress ***.' *Gibbons v. Ogden*, 9 Wheat. 1, 211 (1824)." (*Chicago & North Western Transportation Co. v. Kalo Brick & Tile Co.* (1981), 450 U.S. 311, 317, 67 L. Ed. 2d 258, 265, 101 S. Ct. 1124, 1130.) Securities transactions are subject to regulation under Federal and State law as evidenced by the "blue-sky" laws found in many States. In fact section 28a of the Act (15 U.S.C. sec. 78bb(a) (1976)) specifically preserves the right of the States to regulate securities transactions so long as that regulation does not conflict with the provisions of the Act or rules and regulations promulgated under it. (*Leroy v. Great Western United Corp.* (1979), 443 U.S. 173, 182 n.13, 61 L. Ed. 2d 464, 473 n.13, 99 S. Ct. 2710, 2716 n.13; *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ware* (1973), 414 U.S. 117, 137, 38 L. Ed. 2d 348, 365, 94 S. Ct. 383, 394-95.) Nevertheless it must be noted that congressional enactments that do not exclude all State legislation in the same field override State laws with which they do conflict. (*Jones v. Rath Packing Co.* (1977), 430 U.S. 519, 525-26, 51 L. Ed. 2d 604, 614, 97 S. Ct. 1305, 1309-10.) The criterion for determining whether State and Federal laws are so inconsistent that the State law must give way is to determine whether under the circumstances of the particular case, the State's law stands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress. 430 U.S. 519,

526, 51 L. Ed. 2d 604, 614, 97 S. Ct. 1305, 1310.

The specific question presented to us here is whether the provisions of the Act relied upon by the CBOE preempt the Board of Trade's equitable remedy of specific performance. We address this issue recognizing that the survival of a State judicial remedy depends on the effect of the exercise of the remedy upon the Federal statutory scheme of regulation. *Hewitt-Robins, Inc. v. Eastern Freight-Ways, Inc.* (1962), 371 U.S. 84, 89, 9 L. Ed. 2d 142, 147, 83 S. Ct. 157, 160.

The CBOE specifically relies on certain provisions of the Act which deal with exchange rule-making policies, the criteria by which an exchange may or must deny membership to an applicant, the procedures by which an exchange may discipline a member or limit the access of exchange services to a member. Pursuant to these provisions an exchange cannot be registered as a national securities exchange unless the Commission determines that it is so organized and has the capacity to be able to carry out the purposes of the Act and to comply and enforce compliance by its members and persons associated with its members with the provisions of the Act, the rules and regulations thereunder and the rules of the exchange. (15 U.S.C. sec. 78f(b)(1) (1976).) The rules of the exchange must also provide that its members and persons associated therewith be appropriately disciplined for violations of the Act, the rules and regulations thereunder or the rules of the exchange by expulsion, suspension, limitation of activities, functions, and operations, fine, censure, or any other fitting sanction. (15 U.S.C. sec. 78f(b)(6) (1976).) The rules of the exchange must also provide a fair procedure for the disciplining of members and persons associated with members, and the prohibition or limitation by the exchange of any person with respect to the access of services offered by the exchange. (15 U.S.C. sec. 78f(b)(7) (1976).) The Act also sets forth certain conditions not relevant here under which a person must or may be denied membership. 15 U.S.C. sec. 78f(c) (1976).

The Act also establishes the procedure to be followed by the exchange in determining whether a member should be disciplined, be denied membership or be prohibited with respect to access to exchange services, including notice and the opportunity to be heard. (15 U.S.C. sec. 78f(d)(1), (d)(2) (1976).) If an exchange imposes any final disciplinary sanction on any member, denies membership to an applicant or prohibits or limits access to services offered by the exchange, it shall promptly file notice thereof with the Commission. (15 U.S.C. sec. 78s(d)(1) (1976).) Final action taken by an exchange concerning a matter relating to the qualifications of an individual to participate in the organization, or relating to an administrative matter not involving

charges leading to disciplinary sanctions such as the failure to pay entry or other dues or fees are not considered final disciplinary actions. However, notice of such action must also be filed with the Commission. General Rules and Regulations, Securities Exchange Act of 1934, 17 C.F.R. sec. 240.19(d)—(1)(e) (1981).

Any action for which such notice is required is subject to review by the Commission on its own motion or upon application by any person aggrieved thereby. (15 U.S.C. sec. 78s(d)(2) (1976).) "Person" is defined by the Act as "a natural person, company, government, or political subdivision, agency, or instrumentality of a government." (15 U.S.C. sec. 78c(a)(9) (1976).) The applicant for review shall file a brief or other statement in support of his application which shall state the specific grounds on which the application is based, the particular findings of the exchange to which objection is taken and the relief sought. (17 C.F.R. sec. 240.19d—3(c) (1981).) The exchange may file an answer thereto. (17 C.F.R. sec. 240.19d—3(d) (1981).) On its own motion the Commission may direct that the record under review be supplemented with additional relevant evidence. Nevertheless the exchange and those persons aggrieved by its actions are obliged to adduce all evidence that they deem relevant in the proceedings and they may petition the Commission to adduce additional evidence. (17 C.F.R. sec. 240.19d—3(e) (1981).) If in any proceeding to review the denial of membership or the prohibition or limitation by an exchange of any person with respect to access to the services offered, the Commission finds that the specific grounds on which such denial, bar, or prohibition or limitation is based exist in fact, that the denial, bar, or prohibition is in accordance with the rules of the exchange and that the rules were applied in a manner consistent with the purposes of the Act, the Commission shall dismiss the review proceeding. If such finding is not made or if the Commission finds that the exchange's action imposes any burden on competition not necessary or appropriate in furtherance of the Act, the Commission shall set aside the action of the exchange and require it to admit the applicant or grant the person access to its services offered. (15 U.S.C. sec. 78s(f) (1976).) Any "person aggrieved" by such final order of the Commission may seek its review by a United States Court of Appeals. 15 U.S.C. sec. 78y(a)(1) (1976).

The CBOE argues that the State remedy which the Board of Trade seeks would conflict with this comprehensive statutory scheme of exchange membership regulation and would stand as an obstacle to the accomplishment of the evident congressional intent to allow the Commission and not the courts in the first instance to determine whether a person has been denied exchange membership in accord-

ance with the Act. The Board of Trade responds that this is not a case of national significance where State law might intrude on or frustrate a Federal statute; nor is it a case where a decision on the merits under State law would have the slightest impact on the regulation of the CBOE pursuant to the Act. In support the Board cites *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ware* (1973), 414 U.S. 117, 38 L. Ed. 2d 348, 94 S. Ct. 383. In *Ware* the court considered whether Rule 347(b) of the New York Stock Exchange, requiring arbitration of controversies between a registered representative and his employer, preempted California statutory provisions permitting the employee to litigate rather than arbitrate the issue. The court held that State law was not preempted because: there was nothing in the Act or any Commission rule or regulation that specified arbitration as a favored means of resolving employer-employee disputes; Rule 347(b) was not subject to the Commission's review or modification; and the California statute did not frustrate or interfere with the Federal regulatory scheme. *Ware* emphasized that, " 'each case turns on the peculiarities and special features of the Federal regulatory scheme in question.' " (414 U.S. 117, 139, 38 L. Ed. 348, 366, 94 S. Ct. 383, 396, citing *City of Burbank v. Lockheed Air Terminal, Inc.* (1973), 411 U.S. 624, 638-39, 36 L. Ed. 2d 547, 556-57, 93 S. Ct. 1854, 1862.) We find the *Ware* preemption analysis informative but not dispositive here. Subsequent to *Ware*, the Act was amended to include the membership provisions relied upon by CBOE and to broaden the scope of the Commission's review of exchange rules. Furthermore, unlike disputed Rule 347(b) in *Ware*, article 5(b) of CBOE's articles of incorporation is subject both to Commission review and modification. Thus, we do not find *Ware* authoritative for construction of the Act as thereafter amended. See, *e.g.*, *Chicago & North Western Transportation Co. v. Kalo Brick & Tile Co.* (1981), 450 U.S. 311, 328-29, 67 L. Ed. 2d 258, 272, 101 S. Ct. 1124, 1136.

Furthermore, we agree with the CBOE that allowance of the Board of Trade's action for specific performance could conflict with the Commission's oversight and review of exchange decisions relative to membership. This case serves as a perfect example of this potential conflict. If the Board of Trade prevailed Buckley would be reinstated as a member and Hard removed. Hard could then appeal to the Commission through the review procedures set forth in the Act. An obvious conflict would result if the Commission determines that Hard and not Buckley is the proper member for purposes of the Act.

Additionally, we believe that the breadth of the Commission's statutory authority to review exchange decisions relative to membership

suggests a congressional intent to limit judicial interference in the review procedure. The structure of the Act's membership provisions makes plain that Congress intended an aggrieved person seek relief in the first instance before the Commission. (*Cf. Chicago & North Western Transportation Co. v. Kalo Brick & Tile Co.* (1981), 450 U.S. 311, 67 L. Ed. 2d 258, 101 S. Ct. 1124.) We believe that the interpretation is supported by Senate Report No. 94—75 (the report) which cogently illuminates the intent of Congress in passing the 1975 amendment provisions relevant here. (S. Rep. No. 94—75, 94th Cong. 1st Sess., reprinted in (1975) U.S. Code Cong. & Ad. News, 179 *et seq.*) The report emphasized the importance of the securities industry to the economic growth and health of this country and the world and expressed concern that securities markets be able to respond to the demands placed upon them by the increasing tempo and magnitude of the changes in our domestic and international economy. ((1975) U.S. Code Cong. & Ad. News 179, 181.) The 1975 amendments were envisioned as a fundamental reform of the economic and regulatory structure of the securities markets and the securities industry ((1975) U.S. Code Cong. & Ad. News 179, 179), clarifying the scope of the self-regulatory responsibilities of national securities exchanges, and the manner in which those responsibilities are exercised. The 1975 amendments were also seen as clarifying and strengthening the Commission's oversight role with respect to exchanges. (1975) U.S. Code Cong. & Ad. News 179, 200.

The report commented that a common and serious misunderstanding existed as to the nature and limits of the concept of self-regulation. It took issue with the frequently held view that self-regulation is an arrangement whereby the exchanges rather than the Federal government police the conduct and strengthen the professional standards of securities firms. ((1975) U.S. Code Cong. & Ad. News 179, 200-01.) It further stated that such a conception of self-regulation was misleading and emphasized that exchanges exercise authority subject to the Commission's oversight and have no authority to regulate independently of the Commission's control. (1975) U.S. Code Cong. & Ad. News 179, 201.

We also draw attention to the fact that the report stated that the concept of "membership," *i.e.*, voluntary association with an industry organization—is fundamental to the self-regulatory system established by the Act. (1975) U.S. Code Cong. & Ad. News 179, 202.

■ In light of the importance Congress placed on the concept of "membership" in the regulatory scheme it established by the 1975

amendments, as well as the possible conflict with that scheme which might arise as a result of a State court membership determination, we conclude that preemption of the Board of Trade's action for specific performance is required here.

For the reasons cited herein, the judgment of the circuit court is affirmed.

Affirmed.

SULLIVAN, P. J., and WILSON, J., concur.