Philip BARBARA, Plaintiff–Appellant,

v.

NEW YORK STOCK EXCHANGE, INC., Defendant–Appellee.

No. 631, Docket 95–7471.

United States Court of Appeals, Second Circuit.

Argued Dec. 20, 1995.

Decided Oct. 17, 1996.

Edward Basaman, Asbury Park, New Jersey, for Plaintiff–Appellant.

Russell E. Brooks, New York City (Gila E. Fortinsky, Milbank, Tweed, Hadley & McCloy, New York City, of counsel), for Defendant–Appellee.

Before: KEARSE, MAHONEY, and PARKER, Circuit Judges.

MAHONEY, Circuit Judge:

Plaintiff-appellant Philip Barbara appeals from a judgment entered April 6, 1995 in the United States District Court for the Eastern District of New York, Allyne R. Ross, *Judge,* that dismissed his complaint against defendant-appellee the New York Stock Exchange (the "Exchange" or the "NYSE") for failure to exhaust administrative remedies, and denied as moot Barbara's motion for leave to file an amended complaint. Because Barbara was required to exhaust his administrative remedies before seeking declaratory or injunctive relief in a judicial forum, and because the Exchange is entitled to immunity from suits for damages that arise out of its conduct of disciplinary proceedings, we affirm the judgment of the district court.

## Background

On this appeal from a dismissal for failure to state a claim, we accept as true the factual allegations set forth in Barbara's complaint and proposed amended complaint. *See Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 377 (2d Cir.1995), *cert. denied,* —— U.S. ——, 117 S.Ct. 50, 136 L.Ed.2d 14 (1996).

The Exchange is a nonprofit New York corporation registered with the Securities and Exchange Commission (the "SEC") as a national securities exchange pursuant to section 6 of the Securities Exchange Act of 1934, as amended (the "Act" or the "Exchange Act"), 15 U.S.C. § 78f. As an association of securities dealers, the Exchange authorizes its members to effectuate securities transactions on its auction market, known as the Exchange floor. Under the Act, the Exchange is a "self-regulatory organization," *see* 15 U.S.C. § 78c(a)(26), which means that it has a duty to promulgate and enforce rules governing the conduct of its members, *see id.* §§ 78f(b), 78s(g); *see also Silver v. New York Stock Exch.,* 373 U.S. 341, 352–53, 83 S.Ct. 1246, 1254–55, 10 L.Ed.2d 389 (1963) (discussing duty of self-regulation). These rules are subject to SEC approval. *See* 15 U.S.C. § 78s(b). In accordance with the statutory scheme, the Exchange conducts disciplinary proceedings when a member, or a person associated with a member, is suspected of violating federal securities laws or internal Exchange rules or regulations. *See Id.* § 78f(d). The Act requires that these disciplinary proceedings be conducted in compliance both with the Act and with the Exchange's rules and regulations. *See Id.* § 78s(g)(1). Notice of any final disciplinary sanction imposed by the Exchange must be provided to the SEC, *see id.* § 78s(d)(1), and the imposition of a sanction is subject to review by the SEC on its own motion or at the instance of an aggrieved party, *see id.* § 78s(d)(2).

From 1975 until 1991, Barbara was employed as a floor clerk by various members of the Exchange, and was thus permitted access to the floor of the Exchange. In August 1990, the Exchange's Division of Enforcement (the "Division") began an investigation into alleged misconduct by Barbara and one of his employers, Mabon, Nugent Securities ("Mabon"). In November 1990, prior to the completion of the investigation, Mabon terminated Barbara's employment, although Barbara continued to work part-time for Joacinth Lombardo, Inc., an organization which

operated out of Mabon's booth on the Exchange floor.

Barbara was given notice of disciplinary charges against him on or about December 21, 1990. As a result of the charges being filed, the Division barred Barbara from the floor of the Exchange pending the outcome of an acceptability hearing before the Exchange's Acceptability Committee (the "Committee") pursuant to NYSE Rules 35 and 308.[1] The Committee held a hearing on January 21, 1991. On March 6, 1991, without rendering an opinion as to the merits of the charges, the Committee ruled that Barbara's case should have been heard by an Exchange hearing panel in accordance with NYSE Rule 476.[2]

Following the Committee's decision, Barbara petitioned the Exchange's Board of Directors (the "Board") for a stay of the Division's floor ban, which the Board granted on March 26, 1991. On June 6, 1991, the Board reversed all charges brought against Barbara, finding, *inter alia*, that Barbara had been denied adequate access to discovery materials. Notwithstanding the Board's stay and ruling, however, the Division continued to bar Barbara from the Exchange floor. Barbara thereafter abandoned his career in the securities industry.

Barbara commenced the present suit against the Exchange in New York Supreme Court, Richmond County on February 18, 1994. Barbara alleged in his complaint that agents and officers of the Division had wrongfully barred him from the Exchange floor, thereby damaging Barbara's reputation and causing him to lose employment opportunities with two Exchange members, and ultimately to leave the securities industry. Barbara alleged various causes of action under New York law, including tortious interference with contractual relationships, tortious interference with prospective economic advantage, negligent supervision by the Exchange of the Division, and breach of a covenant of fair dealing within an implied contract. He sought $10 million in consequential and compensatory damages and $25 million in punitive damages.

After filing a timely notice of removal to the United States District Court for the

---

1. Rule 35 states:

 No employee of a member or member organization shall be admitted to the Floor unless he is registered with and approved by the Exchange, and upon compliance of both the employer and employee with such requirements as the Exchange may determine.

 Rule 308 states in relevant part:

 (a) The Exchange may disapprove (i) the application of a prospective member or member organization; or (ii) the application for employment or association with a member or member organization, of any prospective member, allied member, approved person, registered representative, or other person required by the [NYSE] Constitution or Rules thereunder to be approved by the Exchange; or (iii) any change in the status of any person which change requires approval of the Exchange; or (iv) the application of any non-member broker/dealer accessee, as provided for in the Exchange Constitution and Rules thereunder, or in the Securities Exchange Act of 1934, as amended.

 (b) Prior to disapproval of any such application, the Exchange shall conduct a proceeding which shall be instituted by the preparation of a written memorandum setting forth ... the specific grounds for disapproval under consideration....

 (c) All proceedings under this rule shall be conducted in accordance with the provisions of this rule and shall be held before an Acceptability Committee....

 . . . .

 (g) Any person whose application has been disapproved by an Acceptability Committee, or any member of the Board of Directors of the Exchange may require a review by the Board of any determination of an Acceptability Committee.... The determination of the Board of Directors shall be final and conclusive action by the Exchange.

2. Rule 476 states in relevant part:

 (a) If a member, member organization, allied member, approved person, registered or non-registered employee of a member or member organization or person otherwise subject to the jurisdiction of the Exchange is adjudged guilty in a proceeding under this Rule of [violating federal securities laws or Exchange rules] then, in any such event, the Hearing Panel shall, in accordance with the procedures set forth in this Rule, impose one or more ... disciplinary sanctions on such member, member organization, allied member, approved person, registered or non-registered employee or person otherwise subject to the jurisdiction of the Exchange....

 See generally David P. Doherty *et al., The Enforcement Role of the New York Stock Exchange,* 85 *Nw.U.L.Rev.* 637, 643–47 (1991) (discussing Exchange disciplinary proceedings).

Eastern District of New York pursuant to 28 U.S.C. §§ 1441(b) and 1442(a)(1), the Exchange moved in the district court to dismiss Barbara's complaint on the alternative grounds that (1) the district court lacked subject matter jurisdiction, and (2) Barbara had failed to state a claim upon which relief could be granted. Barbara opposed the motion to dismiss and cross-moved pursuant to Rule 15(a) of the Federal Rules of Civil Procedure for leave to file an amended complaint.[3] Barbara's proposed amended complaint reiterated his original causes of action and added claims of denials of due process in contravention of the Fifth Amendment and a violation of 42 U.S.C. § 1983, as well as applications for declaratory and injunctive relief barring further prosecution against him by the Exchange, and for attorney fees pursuant to 42 U.S.C. § 1988. The district court granted the Exchange's motion to dismiss on the basis that Barbara had failed to exhaust his administrative remedies, and denied as moot Barbara's motion for leave to amend his complaint. *See Barbara v. New York Stock Exch.,* No. 94–CV–1088 (ARR), 1995 WL 221487, at *7 (E.D.N.Y. Mar.30, 1995).

This appeal followed.

## Discussion

### A. *Removal Jurisdiction.*

We begin by considering whether this case was properly removed to federal court. Although neither party raises this issue on appeal, we are under an obligation to do so *sua sponte. See Mignogna v. Sair Aviation, Inc.,* 937 F.2d 37, 40 (2d Cir.1991). Because the district court erred in exercising removal jurisdiction over this action, we explain in some detail why the claims set forth in Barbara's complaint could not have been brought in federal court, and why the present posture of the case nevertheless permits us to exercise jurisdiction over this appeal.

■ As previously noted, the Exchange premised its removal of this case to federal court upon 28 U.S.C. §§ 1441(b) and 1442(a)(1). We accordingly begin by addressing section 1441(b), which provides:

> Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

The general rule established by section 1441(b) is that a state court defendant may remove a case to federal court pursuant to section 1441(b) only if the plaintiff's claims could originally have been brought there. Because there is no diversity of citizenship between Barbara and the Exchange, removal pursuant to section 1441(b) had to be premised upon federal question jurisdiction under 28 U.S.C. § 1331 and/or section 27 of the Exchange Act, 15 U.S.C. § 78aa. We address these jurisdictional provisions in turn.

■ Section 1331 invests "[t]he district court[s] ... [with] original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Each of the five "counts" in Barbara's state court complaint, however, purported to state a claim under the common law of New York. Thus, the most obvious basis for section 1331 "arising under" jurisdiction—a federal claim—was absent from Barbara's complaint. *See American Well Works Co. v. Layne & Bowler Co.,* 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916) ("A suit arises under the law that creates the cause of action."). Furthermore, the fact that the Exchange's principal defenses to Barbara's action—immunity from suit and failure to exhaust administrative remedies—are issues of federal law, *see infra,* does not suffice to establish federal jurisdiction under section 1331. *See Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 12, 103 S.Ct.

---

**3.** Rule 15(a) allows a party to amend a pleading "once as a matter of course at any time before a responsive pleading is served.... Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."

2841, 2848, 77 L.Ed.2d 420 (1983) (" 'By unimpeachable authority, a suit brought upon a state statute does not arise under an act of Congress or the Constitution of the United States because prohibited thereby.' ") (quoting *Gully v. First Nat'l Bank,* 299 U.S. 109, 116, 57 S.Ct. 96, 99, 81 L.Ed. 70 (1936)); *see also Louisville & N.R.R. v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908) ("Although [an anticipated response premised upon the federal Constitution to an expected defense] show[s] that very likely, in the course of the litigation, a question under the Constitution would arise, [it] do[es] not show that the suit, that is, the plaintiff's original cause of action, arises under the Constitution.").

Although "the vast majority of cases brought [in federal court pursuant to section 1331] are those in which federal law creates the cause of action," *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 808, 106 S.Ct. 3229, 3232, 92 L.Ed.2d 650 (1986), a case may also arise under federal law within the meaning of section 1331 if "the plaintiff's right to relief [under state law] necessarily depends on resolution of a substantial question of federal law," *Franchise Tax Bd.,* 463 U.S. at 28, 103 S.Ct. at 2856; *see also Smith v. Kansas City Title & Trust Co.,* 255 U.S. 180, 200–02, 41 S.Ct. 243, 245–46, 65 L.Ed. 577 (1921). Barbara's state court complaint does make factual allegations that the Exchange violated its internal rules, and we are willing to assume that Barbara's right to recover under New York law is contingent on his proving such violations. We nevertheless conclude that Barbara's claims could not have been brought in federal court pursuant to section 1331.

■ "[T]he mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow,* 478 U.S. at 813, 106 S.Ct. at 3234. "Rather, in determining federal question jurisdiction, courts must make 'principled, pragmatic distinctions,' engaging in " " 'a selective process which picks the substantial causes out of the web and lays the other ones aside.' " " " *Greenblatt v. Delta Plumbing & Heating Corp.,* 68 F.3d 561, 570 (2d Cir.1995) (quoting *Merrell Dow,* 478

U.S. at 813–14, 106 S.Ct. at 3235 (quoting *Franchise Tax Bd.,* 463 U.S. at 20–21, 103 S.Ct. at 2852 (quoting *Gully,* 299 U.S. at 118, 57 S.Ct. at 100))). In *Merrell Dow,* the Supreme Court held that "the congressional determination that there should be no federal remedy for the violation of [the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.,*] is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction." 478 U.S. at 814, 106 S.Ct. at 3235. Although subsequent cases in this circuit have not read *Merrell Dow* categorically to preclude federal question jurisdiction in the absence of a private remedy for violation of the relevant federal law, *see, e.g., West 14th St. Commercial Corp. v. 5 West 14th Owners Corp.,* 815 F.2d 188, 196 (2d Cir.), *cert. denied,* 484 U.S. 850, 871, 108 S.Ct. 151, 200, 98 L.Ed.2d 107, 151 (1987), the existence *vel non* of such a private right of action is the starting point for our inquiry into the substantiality of the federal questions involved in a lawsuit.

■ In *Lank v. New York Stock Exchange,* 548 F.2d 61, 66 (2d Cir.1977), we held that because the class of persons for whose benefit section 78f(d) (requiring the Exchange to enforce its own rules) was enacted consisted of investors in the securities markets, any private right of action under section 78f(d) was available only to such investors, and did not extend to member organizations of securities exchanges. Similarly, Barbara is a member not of the investing public, but rather of the class of persons whose conduct is regulated by the Exchange pursuant to its duties under the Exchange Act. Barbara therefore can claim no private right of action under section 78f(d). *See Manning v. Smith Barney, Harris Upham & Co.,* 828 F.Supp. 256, 257–58 (S.D.N.Y. 1993).

■ The lack of a private right of action counsels against a finding of federal question jurisdiction. We note further that "the rules of a securities exchange are contractual in nature," *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Georgiadis,* 903 F.2d 109, 113

(2d Cir.1990), and are thus interpreted pursuant to ordinary principles of contract law, an area in which the federal courts have no special expertise. *Cf. Greenblatt,* 68 F.3d at 570–71 (holding that a suit requiring the construction of a collective bargaining agreement does not raise a substantial federal question). We conclude that the federal questions arising out of Barbara's state law complaint are insufficiently substantial to "arise under" federal law within the meaning of section 1331. *Cf. Bernstein v. Lind–Waldock & Co.,* 738 F.2d 179, 184 (7th Cir.1984) (suit brought by former member against Chicago Mercantile Exchange, a self-regulatory organization under the Commodity Exchange Act, 7 U.S.C. § 1 *et seq.,* which alleged violation or misapplication of rules of Chicago Mercantile Exchange did not arise under federal law).

■ Our determination that Barbara's state court complaint did not "arise under" federal law within the meaning of section 1331 effectively resolves our inquiry under section 27 of the Exchange Act as well. Section 27 states in pertinent part:

> The district courts of the United States ... shall have exclusive jurisdiction of violations of [the Exchange Act] or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by [the Exchange Act] or the rules and regulations thereunder.

15 U.S.C. § 78aa.

We think that the quoted language plainly refers to claims created by the Act or by rules promulgated thereunder, but not to claims created by state law. *See Buckley v. Chicago Bd. Options Exch., Inc.,* 109 Ill. App.3d 462, 65 Ill.Dec. 59, 62, 440 N.E.2d 914, 917 (1982) (holding that a state law claim against a national securities exchange for breach of a provision in its certificate of incorporation is not within the scope of section 27); *cf. Manning v. Smith Barney, Harris Upham & Co.,* 822 F.Supp. 1081, 1083 (S.D.N.Y.) (rejecting argument that because the parties were "required by the NYSE rule to arbitrate disputes, any liability which is determined by such arbitration is a liability under the Exchange Act which can only be enforced in federal court"), *adhered to on reconsideration,* 828 F.Supp. 256 (S.D.N.Y. 1993); *Bills v. Shaw, Hooker & Co.,* 398 F.Supp. 161, 163 n. 3 (N.D.Cal.1975) ("[T]he language [of section 27] 'suits in equity and actions at law *brought to enforce* any liability or duty created by this chapter ...' does not encompass [state law claims to which a defense is made on the basis of the Exchange Act]."). Thus, federal jurisdiction over Barbara's state law claims may not be premised upon section 27.

■ The Exchange also relied upon 28 U.S.C. § 1442(a)(1) as an alternative basis for removal. Section 1442(a)(1), which permits removal of an action commenced in state court against. "[a]ny officer of the United States or any agency thereof, or person acting under him, for any act under color of such office," does not require original federal court jurisdiction over a plaintiff's claims as a prerequisite to removal. *See Mesa v. California,* 489 U.S. 121, 136–37, 109 S.Ct. 959, 968–69, 103 L.Ed.2d 99 (1989). It is clear, however, that the Exchange is not "a person acting under" an officer of the United States or an officer of the SEC, *see International Primate Protection League v. Administrators of Tulane Educational Fund,* 500 U.S. 72, 82–84, 111 S.Ct. 1700, 1706–08, 114 L.Ed.2d 134 (1991), and the Exchange's invocation of section 1442(a)(1) is thus inapposite.

Accordingly, we conclude that the Exchange should not have been permitted to remove Barbara's suit to federal court. Barbara did not contest removal, however, and the district court failed *sua sponte* to notice the jurisdictional defect before ruling on the parties' pretrial motions and entering a final judgment. Under most circumstances, such postremoval developments would not alter our analysis, for ordinarily, "[i]f the [district] court never could have exercised original jurisdiction over the case, remand [to the state court] is required even after the entry of final judgment." *Mignogna,* 937 F.2d at 40 (*citing American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 18, 71 S.Ct. 534, 542, 95 L.Ed. 702 (1951)).

■ A federal appellate court will not remand a case to state court, however, if the

federal district court would have had subject matter jurisdiction if the suit had been filed in federal court in the posture it had at the time of the entry of final judgment. *See Grubbs v. General Elec. Credit Corp.,* 405 U.S. 699, 700, 92 S.Ct. 1344, 1346–47, 31 L.Ed.2d 612 (1972); *Finn,* 341 U.S. at 16–17, 71 S.Ct. at 541–42; *Kidd v. Southwest Airlines,* 891 F.2d 540, 546–47 (5th Cir.1990). Thus, if a district court erroneously exercises removal jurisdiction over an action, and the plaintiff voluntarily amends the complaint to allege federal claims, we will not remand for want of jurisdiction. *See Kidd,* 891 F.2d at 547 ("[W]here, after objecting to removal, the plaintiff voluntarily amends the original complaint to allege a federal cause of action, the plaintiff will have waived the ability to challenge removal jurisdiction."); *Bernstein,* 738 F.2d at 185 ("[O]nce [plaintiff] decided to take advantage of his involuntary presence in federal court to add a federal claim to his complaint he was bound to remain there."); *cf. Naylor v. Case & McGrath, Inc.,* 585 F.2d 557, 562 (2d Cir.1978) ("The district court . . . has the power to grant leave to amend the complaint and the removal petition to show jurisdiction."). *But see Kelly v. Carr,* 691 F.2d 800, 805–06 (6th Cir.1980) (amendment does not cure defects in removal jurisdiction).

 In the present case, Barbara moved for leave to file an amended complaint prior to the entry of final judgment. Barbara's proposed amended complaint included causes of action based upon alleged violations of federal law, and had his motion for leave to amend been granted by the district court, the amendments would have sufficed to establish federal question jurisdiction (with pendent jurisdiction over the state law claims). The district court, however, denied Barbara's motion as moot after dismissing his complaint for failure to exhaust available administrative remedies. *See Barbara,* 1995 WL 221487 at *7.

Because the Exchange had not yet filed a responsive pleading in the action, *see* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1483, at 584–85 (2d ed. 1990) (noting that a motion to dismiss is not a responsive pleading within the meaning of Rule 15(a)), it appears that Barbara was entitled to amend his complaint as a matter of right without leave of the district court. *See* Rule 15(a), *supra* note 3; *Washington v. New York City Bd. of Estimate,* 709 F.2d 792, 795 (2d Cir.), *cert. denied,* 464 U.S. 1013, 104 S.Ct. 537, 78 L.Ed.2d 717 (1983). Under these circumstances, we deem Barbara's complaint to have been amended to add federal claims, thereby conferring subject matter jurisdiction upon the federal courts.[4] We therefore turn to the merits of Barbara's appeal.

### B. *Exhaustion of Administrative Remedies.*

The district court dismissed Barbara's complaint for failure to exhaust administrative remedies, concluding that Barbara should have relied upon the administrative review provisions of the Exchange Act. *See Barbara,* 1995 WL 221487 at *2–*7. The Act specifies that persons aggrieved by the disciplinary actions of a national securities exchange may seek review by appeal to the appropriate federal regulatory agency, in this case, the SEC. *See* 15 U.S.C. § 78s(d)(2). The agency is authorized to set aside any sanctions imposed by the exchange, *see id.* § 78s(e)(1)(B), and decisions of the agency are reviewed in the court of appeals, *see id.* § 78y(a)(1). We have ruled, in the context of an application for declaratory and injunctive relief against an SEC administrative proceeding to discipline professionals, that "[i]n general, a litigant is required to pursue all of his administrative remedies before he will be

4. Because we exercise jurisdiction over Barbara's amended complaint, we have no need to decide whether remand might otherwise be inappropriate because it would be futile. *See Mignogna,* 937 F.2d at 41–43. Although we have indicated that we might be willing to entertain the futility exception, *see id.* at 41, it should be noted that the Supreme Court, in commenting upon the possibility of such an exception, took

"note . . . of 'the literal words of § 1447(c), which, on their face, give . . . no discretion to dismiss rather than remand an action.' " *International Primate,* 500 U.S. at 89, 111 S.Ct. at 1710 (quoting *Maine Ass'n of Interdependent Neighborhoods v. Commissioner, Maine Dep't of Human Servs.,* 876 F.2d 1051, 1054 (1st Cir. 1989)) (first alteration added herein, second alteration added in *International Primate* ).

permitted to seek judicial relief." *Touche Ross & Co. v. SEC,* 609 F.2d 570, 574 (2d Cir.1979). We specified that the exhaustion requirement applies to "any challenges ... to any disciplinary action" taken by the SEC with respect to the targets of an SEC disciplinary proceeding. *Id.* at 575.

■ The exhaustion requirement has also been applied to review of disciplinary actions by self-regulatory organizations such as national securities exchanges. *See e.g., First Jersey Sec., Inc. v. Bergen,* 605 F.2d 690, 696 (3d Cir.1979), *cert. denied,* 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. National Ass'n of Sec. Dealers, Inc.,* 616 F.2d 1363, 1370–71 (5th Cir.1980); *Bruan, Gordon & Co. v. Hellmers,* 502 F.Supp. 897, 905 (S.D.N.Y.1980) (on reconsideration). We agree that, given the "comprehensive review procedure" established by the Exchange Act, *First Jersey,* 605 F.2d at 696, Congress intended that the doctrine of exhaustion of administrative remedies, in appropriate circumstances, apply to challenges to the disciplinary proceedings of the national securities exchanges. As previously noted, Barbara's amended complaint seeks "a declaratory judgment barring any further prosecution by the [Exchange] on the charges and accusations brought against [Barbara] on December 20, 1990." Because Barbara seeks to enjoin future Exchange disciplinary action that should properly be contested in the ordinary course of administrative proceedings, we conclude that his application for declaratory/injunctive relief is barred for failure to exhaust administrative remedies.

■ We also conclude, however, that the district court erred in dismissing Barbara's damages claims for failure to exhaust his administrative remedies. It is well settled that although an administrative agency's "inability to grant full relief does not dispose of the exhaustion requirement," exhaustion will not bar a suit when "available [administrative] remedies provide no 'genuine opportunity for adequate relief.'" *Guitard v. U.S. Sec'y of the Navy,* 967 F.2d 737, 741 (2d Cir.1992) (quoting *Von Hoffburg v. Alexander,* 615 F.2d 633, 638 (5th Cir.1980)). In the instant case, Barbara seeks monetary relief.

However, the administrative review provisions of the Act do not provide for money damages, and this fact counsels strongly against requiring exhaustion. *See McCarthy v. Madigan,* 503 U.S. 140, 154, 112 S.Ct. 1081, 1091, 117 L.Ed.2d 291 (1992) ("[T]he absence of any monetary remedy in the grievance procedure ... weighs heavily against imposing an exhaustion requirement."); *id.* at 156, 112 S.Ct. at 1092 (Rehnquist, C.J., concurring in the judgment) ("My view [that exhaustion is not required] is based entirely on the fact that the grievance procedure at issue does not provide for any award of monetary damages. As a result ... the Bureau's administrative remedy furnishes no effective remedy at all....").

It is true that

a boilerplate claim for damages will not automatically render the administrative remedy inadequate. Where the relief claimed is the only factor that militates against the application of the exhaustion requirement, the complaint should be carefully scrutinized to ensure that the claim for relief was not inserted for the sole purpose of avoiding the exhaustion rule.

*Plano v. Baker,* 504 F.2d 595, 599 (2d Cir. 1974). In this case, however, the principal relief sought in Barbara's original and amended complaints is money damages. Indeed, Barbara's application for declaratory and injunctive relief was not even included in his initial complaint; it was added only in the amended complaint that the district court dismissed as moot.

Barbara is essentially seeking compensation for past harms, rather than the reversal of an adverse Exchange determination. In fact, Barbara has alleged that the Board ultimately ruled in his favor. Barbara's suit is akin to an action for malicious prosecution brought following a determination favorable to the defendant, and the monetary compensation that he seeks cannot be realized through the administrative review procedures of the Exchange Act.

Thus, the district court should not have dismissed Barbara's damages claims for failure to exhaust administrative remedies. We retain on appeal, however, the authority to

affirm the district court's dismissal on any ground that is supported by the record. *See I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.,* 936 F.2d 759, 761 (2d Cir. 1991). The Exchange urges two: that it is entitled to immunity from suits related to its conduct of disciplinary proceedings, and that Barbara failed to state a claim on which relief can be granted. We will address only the immunity claim, which suffices to dispose of this appeal.

## C. *Immunity from Suit.*

■ In addressing a challenge to action taken by a disciplinary panel acting in behalf of the National Association of Securities Dealers, Inc. (the "NASD"), the Fifth Circuit held that the panel members were "entitled to absolute immunity from ... civil liability for their actions taken within the outer scope of their official duties." *Austin Mun. Sec., Inc. v. National Ass'n of Sec. Dealers, Inc.,* 757 F.2d 676, 689 (5th Cir.1985). The District Court for the Southern District of New York has twice opined that self-regulatory organizations are entitled to at least qualified immunity in connection with the conduct of disciplinary proceedings, *see Bruan, Gordon & Co.,* 502 F.Supp. at 902–03; *Trama v. New York Stock Exch., Inc.,* No. 76 Civ. 4898, 1978 WL 1141, at *5–*6 (S.D.N.Y. Sept.14, 1978), and that court has more recently followed *Austin* in holding that such immunity is absolute, *see Mandelbaum v. New York Mercantile Exch.,* 894 F.Supp. 676, 679–80 (S.D.N.Y.1995). We find the reasoning in *Austin* persuasive, and hold that the Exchange is absolutely immune from damages claims arising out of the performance of its federally-mandated conduct of disciplinary proceedings.

It is well established that "government officials are entitled to some form of immunity from suits for damages." *Harlow v. Fitzgerald,* 457 U.S. 800, 806, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982). Although public officials ordinarily claim only a qualified immunity from suit, the courts have recognized that certain public functions require a greater degree of protection than qualified immunity can provide. *See Nixon v. Fitzger-*

*ald,* 457 U.S. 731, 746, 102 S.Ct. 2690, 2699, 73 L.Ed.2d 349 (1982).

The decision to afford an absolute, rather than a qualified, immunity from suit depends upon the nature of the governmental function being performed. *See Dorman v. Higgins,* 821 F.2d 133, 136 (2d Cir.1987) ("The entitlement of a government official to absolute immunity, protecting him from liability, from suit, and from any scrutiny of the motive for and reasonableness of his official actions, depends on the function he performs."). Accordingly, absolute immunity has been extended (as to appropriate functions) to judges, *see Pierson v. Ray,* 386 U.S. 547, 553–54, 87 S.Ct. 1213, 1217–18, 18 L.Ed.2d 288 (1967); *Fields v. Soloff,* 920 F.2d 1114, 1119 (2d Cir.1990), administrative law judges, *see Butz v. Economou,* 438 U.S. 478, 513–14, 98 S.Ct. 2894, 2914–15, 57 L.Ed.2d 895 (1978), and prosecutors, *see Imbler v. Pachtman,* 424 U.S. 409, 422–24, 96 S.Ct. 984, 991–92, 47 L.Ed.2d 128 (1976); *Fields,* 920 F.2d at 1119.

Although the Exchange is a private, rather than a governmental entity, immunity doctrines protect private actors when they perform important governmental functions. Accordingly, the courts have not hesitated to extend the doctrine of absolute immunity to private entities engaged in quasi-public adjudicatory and prosecutorial duties. In addition to the immunity afforded in *Austin,* the courts of appeals have extended absolute immunity to such private actors as arbitrators and organizations that sponsor arbitration, *see Austern v. Chicago Bd. Options Exch., Inc.,* 898 F.2d 882, 885–87 (2d Cir.), *cert. denied,* 498 U.S. 850, 111 S.Ct. 141, 112 L.Ed.2d 107 (1990); *Corey v. New York Stock Exch.,* 691 F.2d 1205, 1208–11 (6th Cir.1982), and members of bar association disciplinary committees, *see Slavin v. Curry,* 574 F.2d 1256, 1266 (5th Cir.1978), *modified on another ground on rehearing,* 583 F.2d 779 (5th Cir.1978) (per curiam), *overruled on another ground, Sparks v. Duval County Ranch Co.,* 604 F.2d 976, 978 & n. 2 (5th Cir.1979) (in banc), *aff'd sub nom. Dennis v. Sparks,* 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980); *see also Carroll v. Gross,* 984 F.2d 392, 393 (11th Cir.) (per

curiam), *cert. denied,* 510 U.S. 893, 114 S.Ct. 254, 126 L.Ed.2d 206 (1993).

In determining whether the disciplinary officers of the NASD were entitled to absolute immunity, the court in *Austin* conducted an analysis to determine whether:

a) the official's functions share[d] the characteristics of the judicial process;

b) the official's activities [were] likely to result in recriminatory lawsuits by disappointed parties; and

c) sufficient safeguards exist[ed] in the regulatory framework to control unconstitutional conduct.

*Austin,* 757 F.2d at 688 (*citing, Butz,* 438 U.S. at 510–13, 98 S.Ct. at 2912–14).

The function of the defendant in this case is identical with that of the defendants in *Austin.* There is no doubt that those functions "share the characteristics of the judicial process," *id.,* and "are likely to result in recriminating law suits," *id.* Furthermore, the safeguards existing in the regulatory framework of the New York Stock Exchange are identical with those of the NASD. Both organizations are subject to the SEC's regulatory requirements, which provide appropriate procedural safeguards to the disciplinary process. Accordingly, the defendants here are, by a parity of reasoning, entitled to absolute immunity.

We think that absolute immunity is particularly appropriate in the unique context of the self-regulation of the national securities exchanges. Under the Exchange Act, the Exchange performs a variety of regulatory functions that would, in other circumstances, be performed by a government agency. Yet government agencies, including the SEC, would be entitled to sovereign immunity from all suits for money damages. *See Sprecher v. Graber,* 716 F.2d 968, 973 (2d Cir.1983); *see also Austin,* 757 F.2d at 692. As a private corporation, the Exchange does not share in the SEC's sovereign immunity, but its special status and connection to the SEC influences our decision to recognize an absolute immunity from suits for money damages with respect to the Exchange's conduct of disciplinary proceedings.

Furthermore, allowing suits against the Exchange arising out of the Exchange's disciplinary functions would clearly "stand[ ] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941); *see also Barnett Bank v. Nelson,* —— U.S. ——, ——, 116 S.Ct. 1103, 1108, 134 L.Ed.2d 237 (1996), namely, to encourage forceful self-regulation of the securities industry. Other courts have relied upon this rationale in holding that state law claims against self-regulatory organizations are preempted by the Exchange Act. *See American Agric. Movement, Inc. v. Board of Trade,* 977 F.2d 1147, 1154–57 (7th Cir.1992) (ruling that the Commodity Exchange Act preempts state law claims that "bear[ ] upon the actual operation of the commodity futures markets"); *Buckley,* 65 Ill.Dec. at 65, 440 N.E.2d at 920 (Exchange Act preempts state law action for specific performance relating to membership in Chicago Board Options Exchange). Although we do not rely on the doctrine of federal preemption in this case, we think that the reasoning of these cases supports our conclusion that the Exchange is immune from damages claims with respect to its conduct of disciplinary proceedings.

It is clear from the face of Barbara's complaint and amended complaint that he seeks to recover money damages for alleged abuses in the conduct of the Exchange's disciplinary proceedings. The Exchange is therefore absolutely immune from Barbara's claims for money damages.

### Conclusion

The judgment of the district court is affirmed.