**DL CAPITAL GROUP, LLC, on behalf of itself and all others similarly situated, Plaintiff–Appellant,**

v.

**NASDAQ STOCK MARKET, INC. and Robert Greifeld, Defendants–Appellees,**

**Jay Krishnaiah, Kwok Yau–Tong, Anthony Fulkerson, Adam Baruchowitz, Anselm Lin, Craig Allen, Craig Conway and Colonial Fund, LLC, Movants.**

**Docket No. 04–3027–CV.**

United States Court of Appeals, Second Circuit.

Argued: May 19, 2005.

Decided: May 26, 2005.

---

Appearing for Plaintiff–Appellant: Robert I. Harwood (Matthew M. Houston and Joshua D. Glatter, on the brief), Wechsler Harwood LLP, New York, N.Y. and Sherrie R. Savett, Barbara A. Podell, Douglas M. Risen, Berger & Montague, P.C., Philadelphia, PA, of counsel.

Appearing for Defendants–Appellees: Douglas R. Cox (F. Joseph Warin and Michael J. Edney, on the brief), Gibson, Dunn & Crutcher LLP, Washington, D.C.

Before: WINTER, KATZMANN, Circuit Judges. and MURTHA, District Judge.*

KATZMANN, Circuit Judge.

In this case, we are asked to circumscribe the scope of the absolute immunity we have previously extended to so-called self-regulatory organizations ("SROs") when they engage in conduct consistent with the quasi-governmental powers delegated to them pursuant to the Securities Exchange Act of 1934 and the regulations and rules promulgated thereunder. However, because we believe that—at least in

* The Honorable J. Garvan Murtha, United States District Judge for the District of Vermont, sitting by designation.

the circumstances just described—absolute immunity must be absolute, we reject the calls, *inter alia*, to carve out a fraud exception to the absolute immunity doctrine or to distinguish between suits brought by public investors and suits brought by others such as SRO members. Accordingly, we affirm the judgment of the district court.

## I. BACKGROUND

Defendant Nasdaq Stock Market, Inc. ("Nasdaq") is a for-profit subsidiary of the National Association of Securities Dealers, Inc. ("NASD"), a so-called self-regulatory organization ("SRO") registered with the SEC as a national securities association pursuant to the 1938 Maloney Act amendments to the Securities Exchange Act of 1934. *See* 15 U.S.C. § 78o–3 *et seq.*

As an SRO, the NASD is, like other SROs such as the New York Stock Exchange ("NYSE"), authorized by Congress to "promulgate and enforce rules governing the conduct of its members." *Barbara v. New York Stock Exch. Inc.*, 99 F.3d 49, 51 (2d Cir.1996). In this and other respects, the NASD serves as a critical aid to the SEC in implementing and effectuating compliance with the securities laws. Indeed, this Court has previously stated that SROs effectively "stand[ ] in the shoes of the SEC" because they perform regulatory functions that would otherwise be performed by the SEC, *D'Alessio v. New York Stock Exchange, Inc.*, 258 F.3d 93, 105 (2d Cir.2001) and that SROs are, as a result, rightly considered "quasi-governmental" authorities. *Id.* That is not to say, of course, that the SEC, itself, is uninvolved with the affairs of the SROs that assist them in the regulation of the securities markets. On the contrary, the SEC has extensive involvement with, and broad oversight of, SROs, including the responsibility to approve or reject any rule, practice, policy, or interpretation proposed by an SRO. *See* 15 U.S.C. § 78s. Moreover, if an SRO has violated, or is unable to comply with, *inter alia*, the provisions of the Exchange Act, its own rules, or the rules of the SEC, the SEC is authorized to suspend or even revoke an SRO's registration, as well as to impose lesser sanctions. *See* 15 U.S.C. § 78s(g).

The NASD has delegated some of its regulatory powers and responsibilities as an SRO to Nasdaq. Generally speaking, the NASD has authorized Nasdaq to develop, operate, and maintain the Nasdaq Stock Market, to formulate regulatory policies and listing criteria for the Nasdaq Stock Market, and to enforce those policies and rules, subject to the approval of the NASD and ultimately the SEC. More specifically, we note for the purposes of this appeal that the NASD has in Rule 11890, a rule approved by the SEC,[1] authorized Nasdaq to cancel any Nasdaq Stock Market transaction where such a transaction is "clearly erroneous" or cancellation is "necessary for the maintenance of a fair and orderly market or [for] the protection of investors and the public interest." NASD MANUAL (CCH), Rule 11890(b) (2003). Under the terms of Rule 11890, a transaction is considered to be clearly erroneous "when there is an obvious error in any term, such as price, number of shares or other unit of trading, or identification of the security." *Id.* at 11890(a)(1).

---

1. Pursuant to 15 U.S.C. § 78s(b), the SEC must approve all NASD rules, practices, policies and interpretations before they are implemented. *See* 15 U.S.C. § 78s(b). The SEC approved NASD Rule 11890 following a period of public notice and comment. *See* Order Approving a Proposed Rule Change of the National Association of Securities Dealers, Inc. Relating to the Ability to Cancel Erroneous Transactions, 55 Fed.Reg. 12978 (Apr. 6, 1990).

The instant lawsuit arises out of Nasdaq's decision, pursuant to NASD Rule 11890, to cancel certain trades of Corinthian Colleges, Inc. ("COCO") stock on December 5, 2003. The pertinent facts, as alleged in the Complaint, are as follows: Between approximately 10:46 a.m. and 10:58 a.m., the market price of COCO fell precipitously from $57.45 to as low as $38.97. COCO had not issued any statements that would explain the sudden price drop. Nasdaq determined, however, that the extraordinary market activity resulted from multiple orders being routed to multiple market centers and electronic communications networks by a single customer; thus, multiple sell orders had been placed erroneously for COCO. At 10:58 a.m., Nasdaq halted trading in COCO, stating that the plunge was caused by "misuse or malfunction" of an electronic trading system. (*Id.*)

Nasdaq permitted trading to resume approximately one hour later, at 11:55 a.m. (*Id.*) Approximately 45 minutes later—at approximately 12:30 p.m—Nasdaq announced that it would cancel all trades made between 10:46 a.m. and 10:58:08 a.m. The cancellation did not extend to transactions in other stock markets unless done through Nasdaq's Super Montage system. *Id.* Approximately 12 million shares of COCO were traded on December 5, 2003, far above its average daily volume of less than 1 million shares.

Plaintiff DL Capital Group alleges that it purchased shares of COCO long between 10:46 a.m. and 10:58 a.m. and that—once trading on COCO had resumed but before Nasdaq made its cancellation announcement—it sold its shares of COCO at a profit. Because Nasdaq ultimately canceled DL Capital's *purchase* of COCO shares (which occurred between 10:46 a.m. and 10:58 a.m.), but failed to cancel DL Capital's *sale* of COCO shares (because

they occurred outside the 10:46–10:58 a.m. window, namely at some point between 11:55 a.m. and approximately 12:30 p.m.), DL Capital alleges that Nasdaq effectively forced DL Capital into "an uncovered short sale," whereby DL Capital was "forced to purchase shares of COCO at a price higher than the sale price in order to cover the short sale which Nasdaq forced upon it." DL Capital alleges it was thus "injured by having to cover the forced short sale at a loss." (*Id.*)

In December 2003, the plaintiff filed the instant action, bringing two claims, one against Nasdaq and one against Robert Greifeld, Nasdaq's president and chief executive officer at all times relevant to plaintiff's suit. The first claim alleges, in effect, that Nasdaq made materially misleading statements or omissions—that is, committed fraud—by failing to disclose sooner its intention, or final decision, to cancel COCO trades that occurred between 10:46 a.m. and 10:58:08 a.m. The second claim alleges that Greifeld, as a "controlling person" of Nasdaq, violated Section 20(a) of the Exchange Act (the section that establishes controlling person liability) in connection with Nasdaq's general fraud.

Defendants moved to dismiss the Complaint on three grounds: (1) Nasdaq is absolutely immune from suits related to its SRO activities; (2) the plaintiff did not exhaust its remedies before the SEC which, defendants contended, were prerequisites to judicial action; and (3) the Exchange Act does not provide a right of action for money damages against SROs.

On May 3, 2004, the district court granted the defendants' motion on the first of these grounds and accordingly did not reach the others. *See DL Capital Group LLC v. Nasdaq Stock Market, Inc.,* 2004 WL 993109, at *7 (May 5, 2004) [hereinaf-

ter "District Court Opinion"].[2] This appeal then followed.

## II. DISCUSSION

■ There is no question that an SRO and its officers are entitled to absolute immunity when they are, in effect, "acting under the aegis" of their regulatory duties. *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1214 (9th Cir.1998). This Court has—twice before—effectively held as such. First, in *Barbara v. New York Stock Exchange, Inc.*, we upheld a district court's decision to accord absolute immunity to the NYSE for claims "arising out of the performance of its federally-mandated conduct of disciplinary proceedings." 99 F.3d 49, 58 (2d Cir. 1996). We held that although immunity should be decided on a case-by-case basis, it was appropriate to extend absolute immunity to the NYSE because of the "unique context of the self-regulation of the national securities exchanges." *Id.* at 59. We reasoned that because the NYSE "performs a variety of regulatory functions that would, in other circumstances, be performed by [the SEC]"—an agency which is accorded sovereign immunity from all suits for money damages—the NYSE should, in light of its "special status and connection to the SEC," out of fairness be accorded full immunity from suits for money damages, as well. *Id.*

More recently, in *D'Alessio v. New York Stock Exchange Inc.*, the Court considered a suit in which plaintiffs alleged claims predicated on the "NYSE's improper performance of its interpretive, enforcement and referral claims," namely, claims alleging that: the "NYSE incorrectly interpreted and applied section 11(a) of the Exchange Act and regulations and rules

thereto (interpretive function); the NYSE failed to monitor D'Alessio's compliance with the Exchange Act and various rules of the NYSE, and advise him that the commissions he earned in connection with 'flip' trades violated those laws (enforcement function); and the NYSE provided false information when it cooperated with and assisted the United States Attorney's Office and the SEC in their investigations into alleged violations of section 11(a) by D'Alessio and other floor brokers (referral function)." *D'Alessio v. New York Stock Exchange Inc.*, 258 F.3d 93, 106 (2d Cir. 2001). We held, however, that because the "alleged misconduct falls within the scope of quasi-governmental powers delegated to the NYSE pursuant to the Exchange Act . . . absolute immunity precludes D'Alessio from recovering money damages in connection with his claims." *Id.* Moreover, we expressly endorsed the broader principle that a self-regulatory organization "when acting in its capacity as a SRO, is entitled to immunity from suit when it engages in conduct consistent with the quasi-governmental powers delegated to it pursuant to the Exchange Act and the regulations and rules promulgated thereunder." *Id.; see also id.* at 105 (noting that "although the immunity inquiry in *Barbara* was confined to the NYSE's conduct in connection with disciplinary proceedings, *Barbara* stood for the broader proposition that a[n] SRO, such as the NYSE, may be entitled to immunity from suit for conduct falling within the scope of the SRO's regulatory and general oversight functions").

■ The plaintiff contends that the instant case is distinguishable from *Barbara* and *D'Alessio* in a number of important respects and that absolute immunity need not be extended to the defendants. First,

---

2. Because the district court granted the defendants' motion to dismiss, the district court then denied, as moot, the various motions filed by the movants listed in the caption of this appeal. *See* District Court Opinion, 2004 U.S. Dist. LEXIS 7955, at *1, *19.

plaintiff contends that absolute immunity does not here apply because the instant suit concerns activities that fall outside the scope of Nasdaq's regulatory duties, in that plaintiff is challenging *not* Nasdaq's regulatory decisions to suspend trading, resume trading, or cancel trades, but rather the manner in which Nasdaq publicly *announced* those decisions. We disagree. As the district court aptly put it, "[a]nnouncing the suspension or cancellation of trades is as much a part of defendants' regulatory duties as is the actual suspension or cancellation of trades." District Court Opinion, 2004 U.S. Dist. LEXIS 7955, at *17. For "[w]ithout the capacity to make announcements, defendants would be stripped of a critical and necessary part of their regulatory powers," *id.* at *17–18—namely, the power to inform the public of those actions it has undertaken in the interest of maintaining "a fair and orderly market" or protecting "investors and the public interest." NASD MANUAL (CCH), Rule 11890(b) (2003). And reporting its regulatory actions to the public is, at the very least, certainly "*consistent* with [Nasdaq's] quasi-governmental powers" as an SRO, *D'Alessio*, 258 F.3d at 106 (emphasis added), given that safeguarding the integrity of market information was one of the purposes behind the regulation of the securities markets in the first place. *See, e.g., Basic Inc. v. Levinson*, 485 U.S. 224, 246, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988) ("In drafting [the Exchange] Act, Congress expressly relied on the premise that securities markets are affected by information, and enacted the legislation to facilitate an investor's reliance on the integrity of those markets[.]")

■ Plaintiff next contends that absolute immunity cannot extend to suits alleging fraud. However, precedent, not to mention common sense, strongly militates against carving out a "fraud" exception to SRO immunity.[3] As to precedent, this Court has already implicitly held that SROs are absolutely immune to suits alleging fraud. In *D'Alessio*, after all, we upheld the dismissal of all the plaintiffs' claims even though one of the claims was for "fraudulent deceit and concealment." *See D'Alessio*, 258 F.3d at 97–98 (describing plaintiffs' claim for fraudulent deceit and concealment). *Cf. Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1215 (9th Cir.1998) (rejecting a "bad faith" exception to the immunity doctrine and otherwise holding that Nasdaq is immune from suit even if it acted "in a capricious ... tartuffian manner"). Not only that, but this Court has, in other contexts, made clear that allegations of bad faith, malice, and even fraud—all of which may be relevant to a *qualified* immunity analysis—cannot, except in the most unusual of circumstances, overcome *absolute* immunity. *See, e.g., Bernard v. County of Suffolk*, 356 F.3d 495, 502, 505 (2d Cir.2004) (noting that where prosecutor is acting within his scope as a judicial officer, motive is "irrelevant"); *see also id.* at 504 (citing *Dorman v. Higgins*, 821 F.2d 133, 139 (2d Cir.1987)) for the proposition that "absolute immunity spares the official any scrutiny of his motives so that allegations of bad faith or malice cannot defeat a claim of absolute immunity" (internal quotation marks and alterations omitted)); *Schloss v. Bouse*, 876 F.2d 287, 291 (2d Cir.1989) (citing *Taylor v. Kavanagh*, 640 F.2d 450, 451–52 (2d Cir.1981) for the

---

**3.** We note, as well, that nothing in the legislative history of the Maloney Act compels a contrary result. After all, as plaintiff itself concedes, the legislative history of the Maloney Act is completely silent on the issue of SRO immunity from fraud. Indeed, plaintiff has not cited a single passage of legislative history that even mentions—let alone discusses the scope of—SRO immunity in general.

proposition that a prosecutor's conduct in plea bargaining negotiations is protected by absolute immunity notwithstanding allegations of, *inter alia,* fraud).

As a matter of common sense, too, it behooves the Court not to carve out a fraud exception to the absolute immunity of an SRO. It is, after all, hard to imagine the plaintiff (or plaintiff's counsel) who would—when otherwise wronged by an SRO but unable to seek money damages—fail to concoct some claim of fraud in order to try and circumvent the absolute immunity doctrine. Thus, rejecting a fraud exception is a "matter not simply of logic but of intense practicality since [otherwise] the [SRO's] exercise of its quasi-governmental functions would be unduly hampered by disruptive and recriminatory lawsuits." *See D'Alessio,* 258 F.3d at 105, quoting *D'Alessio v. New York Stock Exchange, Inc.,* 125 F.Supp.2d 656, 658 (S.D.N.Y. 2000).

■ Finally, plaintiff contends that absolute immunity does not here protect Nasdaq because absolute immunity does not apply to suits brought by individual investors.[4] However, this Court has never suggested that the identity of the plaintiff is what drives the absolute immunity analysis. Rather, we have made clear that it is the SRO's *function* as a quasi-governmental authority that entitles it to absolute immunity. *See D'Alessio,* 258 F.3d at 104–05 (noting that we decide whether to extend absolute immunity on a "case-by-case basis, depending upon the nature of the governmental function being performed.")(internal quotation marks and alterations omitted); *see also id.,* at 106 ("[W]e hold that the NYSE, when acting in its capacity as a SRO, is entitled to immunity from suit when it engages in conduct consistent with the quasi-governmental powers delegated to it pursuant to the Exchange Act and the regulations and rules promulgated thereunder."). Because Nasdaq here engaged in conduct consistent with the quasi-governmental powers delegated to it by the NASD pursuant to the Exchange Act and the regulations and rules promulgated thereunder, Nasdaq and its officers are entitled to absolute immunity from plaintiff's suit, notwith-

4. Plaintiff's initial brief advanced one other argument about why absolute immunity does not here apply—namely, that unlike the NYSE, Nasdaq is not an SRO in its own right but is, rather, a for-profit corporation that possesses regulatory powers only because the NASD has delegated such powers to it. Subsequently, however, plaintiff has conceded—both in its Reply Brief and at oral argument—that Nasdaq is entitled to absolute immunity to the extent that it is performing regulatory duties delegated to it by the NASD. *See, e.g.,* Reply Brief at 2 ("the issue here is where the line should be drawn between *Nasdaq's regulatory duties, which are immune from suit,* and its non-regulatory activities, which are not") (emphasis added). This was a wise concession on plaintiff's part. Precedent from our circuit makes clear that, in the securities context, the decision to extend absolute immunity depends "upon the nature of the governmental function being performed." *D'Alessio,* 258 F.3d at 104–05 (internal quota-

tion marks and alterations omitted). Because the decision to cancel trades—and the concomitant announcement of that decision—is the type of governmental function deserving of immunity, Nasdaq is entitled to absolute immunity in this case. To be sure, as plaintiff correctly had argued, Nasdaq is a for-profit corporation and Nasdaq is not independently registered as an SRO and enjoys the authority to cancel trades only because the NASD, as an SRO, has empowered it to do so. However, neither of these facts provides a justification for depriving Nasdaq of absolute immunity when it is performing regulatory duties delegated to it by the NASD, especially given the fact that the SEC has explicitly blessed the NASD–Nasdaq " 'chain' of regulatory responsibilities" as consistent with the Exchange Act. *See* Order Approving Proposed Rule Change Amending the Nasdaq By–Laws and Restated Certificate of Incorporation, 65 Fed. Reg. 41116, 41117 (Jul. 3, 2000).

standing the fact that plaintiff is an individual investor.

We have considered all of plaintiff's other arguments and find them to be without merit. For all the above reasons, the defendants are here protected by absolute immunity and the plaintiff's lawsuit was properly dismissed. Accordingly, the judgment of the district court is hereby AFFIRMED.[5]

---

**5.** Because we affirm the district court's determination that the instant suit should be dismissed on absolute immunity grounds, we need not and do not consider the defendants' arguments for affirming the district court on other grounds.