# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Platinum Partners Value Arbitrage Fund, Ltd. Partnership v.*
*Chicago Board Options Exchange,*
**2012 IL App (1st) 112903**

---

| | |
|---|---|
| Appellate Court Caption | PLATINUM PARTNERS VALUE ARBITRAGE FUND, LIMITED PARTNERSHIP, Plaintiff-Appellant, v. CHICAGO BOARD OPTIONS EXCHANGE, OPTIONS CLEARING CORPORATION, and JOHN DOE DEFENDANTS 1 THROUGH 10, Defendants-Appellees. |
| District & No. | First District, Sixth Division<br>Docket No. 1-11-2903 |
| Filed | August 10, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The conduct of defendants, two self-regulatory organizations involved in the trading of options contracts, in providing inside information to certain traders was not subject to the doctrine of regulatory immunity, giving self-regulatory organizations absolute immunity when they are performing their regulatory duties, since providing inside information was not part of their regulatory functions; therefore, the dismissal of plaintiff's complaint based on defendants' conduct was reversed. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CH-54472; the Hon. Mary Anne Mason, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Marvin A. Miller and Matthew E. Van Tine, both of Miller Law LLC, of Chicago, and Sanford P. Dumain, Todd Kammerman, and Jennifer J. Sosa, all of Milberg LLP, of New York, New York, for appellant.

Paul E. Greenwalt and Michelle A. Silverthorn, both of Schiff Hardin LLP, of Chicago, for appellee Chicago Board Options Exchange.

William J. Nissen and David M. Baron, both of Sidley Austin LLP, of Chicago, for appellee Options Clearing Corporation

Panel

PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.

Justice Palmer concurred in the judgment and opinion.

Justice Lampkin dissented, with opinion.

## OPINION

¶ 1    In this case, we must determine whether a self-regulating options organization has absolute immunity from suit when it is claimed that it wrongfully provided inside information to a select number of traders.

¶ 2    Plaintiff Platinum Partners Value Arbitrage Fund, L.P., sued defendants the Chicago Board Options Exchange (CBOE), the Options Clearing Corporation (OCC) and "John Doe" defendants, claiming violations of the Illinois Securities Law of 1953 (Illinois Securities Law) (815 ILCS 5/1 *et seq.* (West 2002)) and the Illinois Consumer Fraud and Deceptive Business Practices Act (the Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2002)) and common law fraud. The trial court granted defendants' motion to dismiss, finding that they were absolutely immune from suit. The trial court held that plaintiff's allegations of misconduct were based on defendants' conduct as self-regulatory organizations. For the following reasons, we reverse. Where defendants privately disclose information about the price adjustment of a stock option to selected market participants before that information is made publicly available, the doctrine of regulatory immunity does not apply.

¶ 3                          BACKGROUND

¶ 4    On December 27, 2010, plaintiff filed the initial verified complaint, alleging that between December 17 and December 20, 2010, defendants CBOE and OCC decided to reduce the strike price on India Fund, Inc. (IFN), series options contracts by $3.78, effective December 29, 2010. IFN is a mutual fund traded at two different options exchanges, one being defendant CBOE. Defendant OCC is a clearing agency, which clears and settles options

trades made by CBOE and other options exchanges, including options in IFN. Plaintiff alleges that an unnamed employee at either defendant CBOE or defendant OCC improperly disclosed to unnamed market participants, the John Doe defendants, that the strike price of IFN would be downwardly adjusted before that decision was publically announced. Plaintiff was injured when it purchased 50,000 IFN put options on December 20 from the John Doe defendants before defendants CBOE and OCC publicly disclosed the information about the reduction in IFN's strike price.

¶ 5    On December 27, 2010, plaintiff filed an emergency motion for a temporary restraining order and preliminary injunction in order to prevent the price adjustment from taking effect. On December 28, 2010, the trial court denied that motion. On February 25, 2011, defendants CBOE and OCC moved to dismiss the initial complaint, claiming that they were immune from suit for plaintiff's claims and that the complaint failed to state claims upon which relief could be granted. After plaintiff obtained new counsel, the parties stipulated to a new briefing schedule on the motion to dismiss to allow plaintiff's new counsel time to review the initial complaint and perform its own investigation of plaintiff's claims. Through that investigation, plaintiff discovered the names of additional potential defendants and other relevant information, which it incorporated into a proposed amended complaint.

¶ 6    On June 9, 2011, plaintiff filed a timely motion to file the proposed amended complaint. On August 31, 2011, after oral argument on defendants' motion to dismiss, the trial court granted the motion to dismiss, finding that defendants CBOE and OCC were absolutely immune from suit because plaintiff's allegations of misconduct were based on defendants CBOE's and OCC's conduct as self-regulatory organizations. Additionally, the trial court dismissed the initial complaint without leave to amend, stating that there was no set of facts that plaintiff could allege that would circumvent the doctrine of regulatory immunity. Thus, the trial court did not rule on plaintiff's motion to amend to add new parties. On September 21, 2011, the trial court entered final judgment in favor of defendants CBOE and OCC. That same day, plaintiff informed the trial court that it wished to withdraw, without prejudice to filing suit at another time, its motion for leave to amend to add additional defendants. The trial court allowed plaintiff to withdraw its motion to amend.

¶ 7    On September 30, 2010, plaintiff timely filed a notice of appeal, appealing the trial court's dismissal of its claims.

¶ 8                                ANALYSIS

¶ 9    In this appeal, plaintiff claims that defendants CBOE and OCC's nonpublic dissemination of information concerning the adjustment of the strike price did not pertain to their regulatory duties. Plaintiff asks us to reverse the dismissal and final judgment entered in favor of defendants CBOE and OCC and to remand the case with directions to reinstate all counts of the complaint for trial on the merits. In the alternative, plaintiff asks us to reverse the dismissal and final judgment entered in favor of defendants CBOE and OCC and to remand the case with directions to grant plaintiff leave to amend its complaint against defendants CBOE and OCC.

¶ 10   The issues presented for review in this case are: (1) whether the trial court properly found

that regulatory immunity barred plaintiff's claims, (2) whether the trial court erred in granting defendants CBOE and OCC's motion to dismiss, and (3) whether the trial court erred in granting defendants' motion to dismiss without permitting plaintiff leave to amend.

¶ 11                                    I. Standard of Review

¶ 12    A motion to dismiss under section 2-615 of the Illinois Code of Civil Procedure challenges the legal sufficiency of the complaint by alleging defects on its face. 735 ILCS 5/2-615 (West 2010); *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 364 (2004). In other words, the motion claims that the plaintiff failed to allege a valid cause of action. Therefore, the standard of review of a trial court's grant to dismiss under section 2-615 is *de novo*. *Lozman v. Putnam*, 379 Ill. App. 3d 807, 820 (2008). Under the *de novo* standard of review, the reviewing court does not need to defer to the trial court's judgment or reasoning. *People v. Vincent*, 226 Ill. 2d 1, 14 (2007). *De novo* review is completely independent of the trial court's decision. *United States Steel Corp. v. Illinois Pollution Control Board*, 384 Ill. App. 3d 457, 461 (2008). In reviewing a section 2-615 challenge to the legal sufficiency of a complaint, a court regards all well-pled facts as true and draws all reasonable inferences in favor of the plaintiff. *Lozman*, 379 Ill. App. 3d at 821; *Iseberg v. Gross*, 366 Ill. App. 3d 857, 860 (2006). The court should "construe the complaint liberally and dismiss only when it appears that the plaintiffs could not recover under any set of facts." *Lozman*, 379 Ill. App. 3d at 821.

¶ 13    The question of whether to grant or deny leave to amend a complaint is within the trial court's discretion, and the trial court's decision will not be reversed absent an abuse of that discretion. Leave to amend should generally be granted unless it is apparent that, even after the amendment, no cause of action can be stated. *Weidner v. Midcon Corp.*, 328 Ill. App. 3d 1056, 1059 (2002). "The test to be applied in determining whether the trial court's discretion was properly exercised is whether the allowance of the amendment would further the ends of justice." *Weidner*, 328 Ill. App. 3d at 1059. Abuse of discretion will be found where no reasonable man could agree with the position of the lower court. *Matthews v. Avalon Petroleum Co.*, 375 Ill. App. 3d 1, 9 (2007).


¶ 14                            II. Doctrine of Regulatory Immunity

¶ 15    Defendants CBOE and OCC are self-regulatory organizations (SROs). 15 U.S.C. § 78c(a)(26) (2006) (defining SROs as including national securities exchanges and clearing agencies). "[A]n SRO and its officers are entitled to absolute immunity when they are, in effect, 'acting under the aegis' of their regulatory duties." *DL Capital Group, LLC v. NASDAQ Stock Market, Inc.*, 409 F.3d 93, 97 (2d Cir. 2005) (quoting *Sparta Surgical Corp. v. National Association of Securities Dealers, Inc.*, 159 F.3d 1209, 1214 (9th Cir. 1998)). The doctrine of regulatory immunity allows SROs the ability to exercise their powers without fear that their discretionary decisions will lead to litigation. *In re NYSE Specialists Securities Litigation*, 503 F.3d 89, 97 (2d Cir. 2007). However, SROs do not have complete immunity from lawsuits. *Weissman v. National Ass'n of Securities Dealers, Inc.*, 500 F.3d 1293, 1297 (11th Cir. 2007). Absolute immunity is improper unless the conduct at issue is a delegated

quasi-governmental prosecutorial, regulatory, or disciplinary function. "[E]ntities that enjoy absolute immunity when performing governmental functions cannot claim that immunity when they perform non-governmental functions." *Weissman*, 500 F.3d at 1296. When these entities perform duties that pertain to the exercise of " 'private franchises, powers, and privileges which belong to them for their own corporate benefit, . . . then a different rule of liability is applied and they are generally held responsible for injuries arising from their negligent acts or their omissions to the same extent as a private corporation under like circumstances.' " *Weissman*, 500 F.3d at 1296-97 (quoting *Owen v. City of Independence*, 445 U.S. 622, 645 n.27 (1980)).

¶ 16    The test for whether an SRO's conduct falls within the scope of regulatory immunity is objective. The subject intent of the SRO is irrelevant. *Weissman*, 500 F.3d at 1297 ("To determine whether an SRO's conduct is quasi-governmental, we look to the objective nature and function of the activity for which the SRO seeks to claim immunity."). Regulatory immunity applies whenever the "plaintiff's allegations concern the exercise of powers within the bounds of the government functions delegated to [the SRO]." *In re NYSE Specialists Securities Litigation*, 503 F.3d 89, 98 (2d Cir. 2007). "Immunity depends only on whether specific acts and forbearances were incident to the exercise of regulatory power, and not on the propriety of those actions or inactions." (Emphasis omitted.) *In re NYSE Specialists Securities Litigation*, 503 F.3d at 98.

¶ 17    The United States Court of Appeals for the Second Circuit listed a number of areas of conduct from which an SRO would be immune from prosecution, including the public announcement of regulatory decisions. *Standard Investment Chartered, Inc. v. National Ass'n of Securities Dealers, Inc.*, 637 F.3d 112, 116 (2d Cir. 2011). The "timing and method of the announcement of an official [SRO] investigation is entitled to absolute immunity." *In re NYSE Specialists Securities Litigation*, 503 F.3d at 100; see also *DL Capital Group, LLC v. Nasdaq Stock Market, Inc.*, 409 F.3d 93 (2d Cir. 2005) ("[R]eporting its regulatory actions to the public is, at the very least, certainly 'consistent with [Nasdaq's] quasi-governmental powers as an SRO ***.' " (Emphasis omitted.) (quoting *D'Alessio*, 258 F.3d at 106)).

¶ 18    In the case at bar, plaintiff concedes that the adjustment of IFN's strike price was a regulatory decision, serving to protect investors by compensation for the fact that the extraordinary distribution declared by IFN would reduce the value of the underlying IFN shares. However, while the price adjustment itself may have been a regulatory decision, the manner in which it was disclosed–privately and prematurely–to the John Doe defendants was not. Defendants CBOE and OCC claim that the public announcement of the price-reduction decision was incidental to the exercise of their regulatory power to adjust the strike price. *In re NYSE Specialists Securities Litigation*, 503 F.3d at 98. However, defendants CBOE and OCC did not *publicly* announce this regulatory decision: the price reduction was privately disseminated only to certain market participants, and that disclosure did not serve any regulatory or governmental purpose. In addition to its quasi-governmental functions, defendants CBOE and OCC have a private, for-profit business, and in the private disclosure of the price-adjustment decision to the John Doe defendants, they were acting in their private capacity and for their own corporate benefit. Therefore, this nonpublic announcement cannot be construed as conduct under the delegated authority of the Securities Exchange Act of 1934

(15 U.S.C. § 78a (2010)) and thus cannot be protected by the doctrine of regulatory immunity. See *Weissman*, 500 F.3d at 1297 ("[B]ecause the law favors providing legal remedy to injured parties, grants of immunity must be narrowly construed; that is, courts must be 'careful not to extend the scope of the protection further than its purposes require.' " (quoting *Forrester*, 484 U.S. at 224 (1988))).

¶ 19                    III. Defendants' "Failure to State a Claim" Argument

¶ 20    Defendants argue that, even in the absence of regulatory immunity, the judgment should be affirmed because plaintiff's complaint failed to state a cause of action. The trial court did not address this argument, as it improperly found that defendants CBOE and OCC had absolute immunity in this case. Although the trial court did not reach this issue, we may affirm on any basis in the record. *Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248, 261 (2004).

¶ 21    Plaintiff's complaint alleged six fraud-based claims against defendants CBOE and OCC: (1) violation of the antifraud provision in section 12(F) of the Illinois Securities Law (815 ILCS 5/12(F) (West 2002)), (2) violation of the antifraud provision in section 12(I) of the Illinois Securities Law (815 ILCS 5/12(I) (West 2002)), (3) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/10a(a) (West 2002)), (4) common law fraud, (5) aiding and abetting a violation by others of the antifraud provision in section 12(G) of the Illinois Securities Law, and (6) injunctive relief. Plaintiff later abandoned the latter two claims: aiding and abetting; and injunctive relief. Each of the four remaining claims is based on the contention that defendants CBOE and OCC disseminated information about the price adjustment to certain market participants but omitted to tell plaintiff and the public at large. Defendants CBOE and OCC argue that they did not owe any fiduciary or other duty of trust or confidence to plaintiff that required them to give plaintiff this information.

¶ 22    Sections 12(F) and (I) of the Illinois Securities Act prohibits the following:

   "F. To engage in any transaction, practice or course of business in connection with the sale or purchase of securities which works or tends to work a fraud or deceit upon the purchaser or seller thereof.

* * *

   I. To employ any device, scheme or artifice to defraud in connection with the sale or purchase of any security, directly or indirectly." 815 ILCS 5/12 (F), (I) (West 2002).

¶ 23    These provisions are modeled after sections 17(a)(1) through (a)(3) of the federal Securities Act of 1933; therefore, Illinois courts tend to look to federal precedent when interpreting these provisions. 15 U.S.C. § 77q(a)(1)-(3); *Tirapelli v. Advanced Equities, Inc.*, 351 Ill. App. 3d 450, 455 (2004). Sections 17(a)(1) through (a)(3) require nearly the same elements as section 10(b) of the Securities Exchange Act of 1934 and section 10b-5 promulgated thereunder. 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5 (2010); *Tirapelli*, 351 Ill. App. 3d at 455. To state a claim under section 10b-5, a complainant must allege that the defendant (1) made a misstatement or omission, (2) of material fact, (3) in connection with the purchase or sale of securities, (4) upon which the plaintiff reasonably relied and (5) that

reliance proximately caused the plaintiff's injuries. *Tirapelli*, 351 Ill. App. 3d at 455. These same elements are required to state a claim under sections 12(F) and (I), the only exception being that *scienter*, or intent or knowledge of wrongdoing, is required for liability under section 12(I). *Foster v. Alex*, 213 Ill. App. 3d 1001, 1005 (1991) (*scienter* is not required under section 12(F)).

¶ 24    Therefore, according to section 10b-5, a private claim under section 12(F) or (I) requires either a misstatement or an omission of material fact. Because plaintiff did not allege a misstatement by defendant CBOE or OCC, the question is whether there was an omission. Omission in this case would require a breach of actionable duty by defendant CBOE or OCC to disclose the price adjustment information to plaintiff. *Stransky v. Cummins Engine Co.*, 51 F.3d 1329, 1331-32 (7th Cir. 1995) ("Mere silence about even material information is not fraudulent absent a duty to speak."); *Tricontinental Industries Ltd. v. Anixter*, 184 F. Supp. 2d 786, 788 (N.D. Ill. 2002) ("An omission of material fact is only actionable under Rule 10b-5 if the defendant has a duty to disclose that fact."). There are two situations in which a duty to disclose arises: (1) when further disclosure is necessary to keep a prior statement from being misleading (*Tricontinental*, 184 F. Supp. 2d at 788); and (2) in the context of a "special or fiduciary relationship, which would raise a duty to speak" (internal quotation marks omitted) (*Weidner v. Karlin*, 402 Ill. App. 3d 1084, 1087 (2010)).

¶ 25    An alleged omission is material if there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *In re Pfizer Inc. Securities Litigation*, 584 F. Supp. 2d 621, 637 (S.D.N.Y. 2008). Plaintiff claims that in privately disseminating information about the price adjustment only to certain insiders, defendants CBOE and OCC made a material omission to plaintiff and the investing public. " '[A]nyone in possession of material inside information must either disclose it. . . , or, if he is disabled from disclosing it in order to protect a corporate confidence, or he chooses not to do so, must abstain from trading in. . . the securities concerned while such inside information remains undisclosed.' " *Vacold LLC v. Cerami*, 545 F.3d 114, 121 (2d Cir. 2008) (quoting *Securities & Exchange Comm'n v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 848 (2d Cir. 1968)). This duty is known as the "disclose-or-abstain duty" because it refers to the rule that "one with a fiduciary or similar duty to hold material nonpublic information in confidence must either 'disclose or abstain' with regard to trading." (Internal quotation marks omitted.) *Vacold LLC v. Cerami*, 545 F.3d 114, 121 (2d Cir. 2008) (quoting *United States v. Teicher*, 987 F.2d 112, 120 (2d Cir. 1993)). Therefore, once this information was disclosed to insiders, defendants CBOE and OCC had a duty to inform the public simultaneously or suspend trading of the IFN options until this information was disclosed to the public. Instead, plaintiff claims that defendants CBOE and OCC allowed themselves to profit from the increased trading volume. Moreover, defendants' duty of disclosure arose out of the fact that, by privately disseminating this information, they were encouraging a market for IFN options. See *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 151-52 (1972) (where defendant was "active in encouraging a market" for a certain stock and profited off the development of that market, that defendant had a duty of disclosure (internal quotation marks omitted)).

¶ 26    In the case at bar, plaintiff claims that defendants CBOE and OCC knowingly shared the

information about the price adjustment with only certain market participants, which allowed those participants to profit from that information by selling the IFN put options to plaintiff, which was unaware of the looming price reduction. Defendant CBOE also profited from these trades, as it derives revenue from the trading of contracts on its exchange. Plaintiff claims that in the private disclosure of the price adjustment, defendants CBOE and OCC engaged in a course of business in connection with the sale or purchase of securities, that worked a fraud or deceit upon the purchaser thereof, in this case, plaintiff. For these reasons, plaintiff adequately pled a cause of action against defendants CBOE and OCC under section 12(F) of the Illinois Securities Law. 815 ILCS 5/12(F) (West 2002).

¶ 27    Additionally, plaintiff claims that defendants CBOE and OCC employed an artifice, device or scheme to defraud in violation of section 12(I) of the Illinois Securities Law. 815 ILCS 5/12(I) (West 2002). The requirements of this claim are identical to section 12(F), with the addition of a *scienter*, or intent or knowledge of wrongdoing. *Tirapelli*, 351 Ill. App. 3d at 455; *Foster v. Alex*, 213 Ill. App. 3d 1001, 1005 (1991). As mentioned above, Illinois courts tend to look to federal precedent in interpreting state law. *Tirapelli*, 351 Ill. App. 3d at 455. Federal courts generally apply a relaxed analysis when a plaintiff asserts a scheme to defraud. "[B]ecause courts acknowledge the difficulty of *** pleading a claim of market manipulation, 'where the exact mechanism of the scheme is likely to be unknown to the plaintiffs, allegations of the nature, purpose, and effect of the fraudulent conduct and roles of the defendants are sufficient for alleging participation.' " *In re Enron Corp. Securities, Derivative & ERISA Litigation*, 235 F. Supp. 2d 549, 580 (S.D. Tex. 2002) (quoting *In re Blech Securities Litigation*, 961 F. Supp. 569, 580 (S.D.N.Y. 1997)). In the case at bar, plaintiff's complaint identifies the nature, purpose, and effect of the fraudulent conduct, namely, that defendants CBOE and OCC knowingly disclosed the price adjustment information to the John Doe defendants, which allowed them to profit from that information before it was disclosed to the public. The effect of the conduct was to injure plaintiff. Therefore, plaintiff adequately pled a cause of action against defendants CBOE and OCC under section 12(I) of the Illinois Securities Law.

¶ 28    To state a claim under the Illinois Consumer Fraud Act, the complaint must allege: (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, (4) actual damage to the plaintiff, and (5) that the damage was caused by the deception. 815 ILCS 505/10a(a) (West 2002); *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 72 (2007). The Consumer Fraud Act is to be interpreted liberally and is meant to "eradicat[e] all forms of deceptive and unfair business practices." *Preston v. Kruezer*, 641 F. Supp. 1163, 1168 (N.D. Ill. 1986). Like violations of sections 12(F) and (I) of the Illinois Securities Law, in a consumer fraud action the plaintiff must actually be deceived by a statement or omission. *De Bouse v. Bayer AG*, 235 Ill. 2d 544, 554 (2009); *Lidecker v. Kendall College*, 194 Ill. App. 3d 309, 314 (1990) (duty to inform plaintiff of allegedly omitted material facts is required for omission liability under common law fraud and Illinois Consumer Fraud Act). However, defendants CBOE and OCC's argument that they are not liable under the Consumer Fraud Act because they did not communicate directly with plaintiff is not persuasive. In the trading of securities over national exchanges, issuers and

exchanges communicate with shareholders through public means. Whenever defendant CBOE or OCC makes a public statement, it conveys information to the market and traders, including plaintiff. As previously discussed, the private disclosure of the price adjustment information would be a material omission and a deceptive act by defendants CBOE and OCC. Plaintiff claims that defendants intended for the rest of the market to rely on the fact that no such information had been privately disclosed. The deception occurred in the course of trade or commerce, and it proximately caused actual damage to plaintiff. Therefore, plaintiff adequately pled a cause of action against defendants CBOE and OCC under the Illinois Consumer Fraud Act.

¶ 29        Finally, the elements for a common law fraud claim are: (1) a false statement of material fact, (2) which was known or believed to be false by the person making the statement, (3) intent by the person making the statement to induce another party to act, (4) justified reliance, and (5) damage to the other party resulting from such reliance. *Soules v. General Motors Corp.*, 79 Ill. 2d 282, 286 (1980). To state a claim for fraudulent omission, the omission "must be shown to have been done with the intention to deceive under circumstances creating an opportunity and duty to speak." *Kurti v. Fox Valley Radiologists, Ltd.*, 124 Ill. App. 3d 933, 938 (1984). The act of disclosing information to certain traders before disclosing it publicly is a deceptive act with a purpose of allowing those selected market participants to profit from the information. In not publicly disclosing the information, plaintiff claims that defendants CBOE and OCC induced the noninformed traders to act. Moreover, plaintiff claims that it was justified in relying on the fact that defendants CBOE and OCC ran an efficient and open market and had not disclosed the decision of the securities committee to any other participants. Finally, plaintiff claims that it was injured by that reliance. Therefore, plaintiff adequately pled a cause of action against defendants CBOE and OCC under common law fraud.

¶ 30        Because defendants CBOE's and OCC's conduct in their private dissemination of the price adjustment information is not protected by the doctrine of regulatory immunity and because plaintiff adequately pled multiple causes of action against defendants, the trial court erred in granting defendants' section 2-615 motion to dismiss by finding immunity. Moreover, plaintiff should have at least been granted leave to amend its complaint. Section 2-616(a) of the Illinois Code of Civil Procedure provides that: "[a]t any time before final judgment amendments may be allowed on just and reasonable terms, introducing any party who ought to have been joined as plaintiff or defendant, dismissing any party, changing any cause of action of defense or adding new cause of action *** which may enable the plaintiff to sustain the claim for which it was intended to be brought." 735 ILCS 5/2-616(a) (West 2010). Leave to amend should be granted unless it is apparent that, even after the amendment, no cause of action can be stated. *Weidner v. Midcon Corp.*, 328 Ill. App. 3d 1056, 1059 (2002) ("The test to be applied in determining whether the trial court's discretion was properly exercised is whether the allowance of the amendment would further the ends of justice."). Plaintiff's initial complaint did plead multiple causes of action for which relief may be granted; however, this complaint was drafted by its previous counsel. Plaintiff's new counsel conducted an investigation that has (1) led to the discovery of facts relevant to plaintiff's allegations concerning the issue of regulatory immunity and the other substantive

claims and (2) added new substantive claims. Therefore, it is in the best interest of justice to allow plaintiff to amend its complaint to include these additional facts and claims.

¶ 31                                    CONCLUSION

¶ 32     For the foregoing reasons, we find that (1) the doctrine of regulatory immunity does not apply in this case because defendants CBOE's and OCC's conduct in providing inside information was not done under their regulatory functions and (2) that the trial court erred in granting defendants' motion to dismiss. Therefore, we must reverse the judgment of the trial court.

¶ 33     Reversed and remanded.

¶ 34     JUSTICE LAMPKIN, dissenting.

¶ 35     I dissent from the majority's conclusion that defendants CBOE and OCC are not immune from suit for plaintiff's alleged claims. I would find that defendants' announcement of their decision to adjust the strike price was a regulatory function and, thus, plaintiff's claims were barred under the doctrine of absolute immunity.

¶ 36     A court–in accordance with well-established precedent–must look at the objective nature and function of the activity in order to determine whether particular conduct is part of an SRO's regulatory function and, thus, entitled to immunity. *Weissman*, 500 F.3d at 1297. Here, the act at issue is the announcement of a regulatory decision. When a court determines whether conduct is regulatory, the court must not inquire into the methods or motives behind the act; immunity is not dependent upon the propriety of the SRO's specific acts incident to the exercise of a regulatory power. *In re NYSE Specialists Securities Litigation*, 503 F.3d at 98. Accordingly, plaintiff's allegations of impropriety concerning defendants' announcement–*i.e.*, that the announcement was tainted by fraud or was not sufficiently public because defendants were motivated to generate profits–are irrelevant.

¶ 37     Regulatory immunity applies whenever "the plaintiff's allegations concern the exercise of powers within the bounds of the governmental functions delegated to [the SRO]," and the court should not ask "whether the SRO is acting (or not acting) 'consistent with' the laws it is supposed to apply." *Id.*; see also *Sparta Surgical Corp.*, 159 F.3d at 1215 (regulatory immunity applies even when the SRO "acted in a capricious, even tartuffian manner which caused [the plaintiff] enormous damage"). "[T]he immunity protects the power to regulate, not the mandate to perform regulatory functions in a certain manner." *In re NYSE Specialists Securities Litigation*, 503 F.3d at 98. The functional approach to the analysis of regulatory immunity is necessary because a plaintiff's allegations of misconduct by an SRO can easily mischaracterize the SRO's acts or determinations as inconsistent with the powers or functions delegated to the SRO. *Id.*

¶ 38     The federal scheme of self-regulation grants SROs immunity in order to avoid the disruptive and unworkable situation of having 50 different states establish 50 different standards for SROs to meet in order to discharge their regulatory duties. Specifically, the

absolute immunity afforded to SROs prevents courts and juries from defining an SRO's regulatory duties by a patchwork of common law decisions among various states that could impose different and potentially inconsistent obligations on SROs. *Sparta Surgical Corp.*, 159 F.3d at 1215. Furthermore, precedent and common sense militate against carving out a fraud exception to an SRO's absolute immunity because recriminatory lawsuits would disrupt the SRO's exercise of its duties if plaintiffs could circumvent the absolute immunity doctrine by concocting some claim of fraud. *DL Capital Group, LLC*, 409 F.3d at 98-99.

¶ 39    Here, the majority carves out an exception to SRO immunity for instances where the alleged conduct is inconsistent with the SRO's regulatory functions. Carving out such an exception "all but swallow[s] the [immunity] doctrine whole," "undermine[s] the immunity doctrine," and "is incompatible with the doctrine's purpose." *In re NYSE Specialists Securities Litigation*, 503 F.3d at 98 & n.3. The majority's decision to allow plaintiff to proceed with its suit against CBOE and OCC thwarts the federal scheme of self-regulation by gutting the absolute immunity afforded to SROs for their regulatory functions. As a result, SROs may be dragged into court by private litigants and forced to expend resources in order to justify their regulatory decisions anytime a private litigant couches an attack on an SRO's regulatory conduct as a claim alleging fraud or the premature disclosure of information to certain individuals or insiders.

¶ 40    Because a court's review of an order granting dismissal under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2010)) accepts all well-pled facts as true and draws reasonable inferences from those facts, a summary of the facts is warranted.

¶ 41    Plaintiff was an investment fund and invested in options on shares of the IFN, a mutual fund that invested in the stock of companies located in India. Specifically, plaintiff invested in put options, which gave plaintiff, as the purchaser of the option, the right but not the obligation to put, or sell, shares of IFN to the option seller at a predetermined price, referred to as the strike price. The higher the strike price in relation to the price of IFN shares, the more valuable the right to require the option seller to buy the put at the strike price. IFN options were traded at the CBOE, and the OCC cleared and settled such trades. Both CBOE and OCC are SROs that exercise authority granted to them by the Securities and Exchange Commission (SEC). As SROs, CBOE and OCC perform quasi-governmental functions, such as, for example, deciding to adjust the strike price of options. CBOE and OCC are also private organizations and engage in profit-making activities and generate revenue.

¶ 42    At the close of trading on Friday, December 17, 2010, plaintiff held approximately 25,000 IFN put options. After the market close on December 17, 2010, IFN announced a distribution or dividend to shareholders of $3.78 per share. CBOE and OCC rules provided for an adjustment to the strike price of options to account for extraordinary dividends. Such dividends generally result in a downward adjustment to the option's strike price to take into account the negative effect the distribution of a corporation's assets has on the value of its stock.

¶ 43    According to its complaint, plaintiff predicted that no adjustment would be made to the strike price of IFN options because plaintiff believed the market had already factored in the anticipated year-end dividend in the price of its put options. Plaintiff also allegedly relied on

one prior instance when a fund similar to IFN declared a dividend and no adjustment to the strike price occurred. Consequently, on Monday, December 20, 2010, plaintiff purchased more than 50,000 additional IFN put options. However, after the market close on December 20, 2010, CBOE and OCC publically announced a downward adjustment of $3.78 to the strike price of IFN options, and plaintiff, as a result, suffered a loss.

¶ 44     Plaintiff's allegations against defendants CBOE and OCC have undergone a metamorphosis during this litigation. When plaintiff sought a temporary restraining order to prohibit CBOE and OCC from implementing the IFN adjustment, plaintiff claimed both that the adjustment decision was erroneous and that CBOE and OCC privately disclosed the adjustment decision to unnamed persons before the public announcement. In response to defendants' arguments concerning absolute immunity, plaintiff discarded its challenge to the propriety of the adjustment and proceeded to challenge only the alleged improper manner in which CBOE and OCC disclosed the adjustment decision. However, in response to defendants' arguments that the announcement of the regulatory decision was afforded the same absolute immunity as the regulatory decision, plaintiff sought to amend its complaint to allege that, because CBOE and OCC earned transaction fees from options trades, those fees motivated them to increase the number of options trades by engaging in a system whereby they disclosed strike price adjustments to insiders. Moreover, at oral argument before this court, plaintiff asserted that it does not challenge either the public announcement of the adjustment decision or the manner of the announcement but, rather, the notion that information about the adjustment was given to defendants' members privately and they profited from it.

¶ 45     Plaintiff, by characterizing its claim against CBOE and OCC as their participation in a system to generate revenue by disclosing material information to insiders, attempts to circumvent the doctrine of absolute immunity and distinguish this case from the well-established precedent that has found absolute immunity for an SRO's announcement of its regulatory decisions and acts. See, *e.g.*, *Standard Investment Chartered, Inc.*, 637 F.3d at 116 (noting that the public announcement of regulatory decisions is one of several regulatory functions for which SROs have regulatory immunity); *In re NYSE Specialists Securities Litigation*, 503 F.3d at 100 (holding that the "timing and method of the announcement of an official [SRO] investigation is entitled to absolute immunity"); *DL Capital Group, LLC*, 409 F.3d at 98 (rejecting the plaintiff's assertion that the manner in which the SRO announced it decisions to suspend, resume or cancel trades was outside the scope of its regulatory duties). See also *Weissman*, 500 F.3d at 1298-99, 1295 & n.3 (although a claim based upon the SRO's alleged advertising of an entity's stock was not barred by absolute immunity because that activity did not serve an adjudicatory, regulatory, or prosecutorial function, a claim based upon the SRO's dissemination of the entity's fraudulent financial statements was barred by regulatory immunity because the SRO was performing a regulatory function).

¶ 46     However, despite plaintiff's creative pleading, there is no getting around the fact that plaintiff essentially contests the manner of CBOE and OCC's announcement of the adjustment decision and, specifically, complains that the announcement was improper because it was either leaked to certain individuals or was not sufficiently public. I would conclude, as did the trial court, that the announcement of the strike-price adjustment was as

much a part of CBOE and OCC's regulatory activity as the adjustment decision itself. See *In re NYSE Specialists Securities Litigation*, 503 F.3d at 100 (the court rejected the plaintiffs' assertion that the private, premature announcement by the SRO, which allegedly tipped off the SRO's specialist firms about an investigation into their conduct, was an act that fell outside the SRO's regulatory functions). Although an action "may not appear to form the heart of the regulatory functions delegated to *** an SRO, [the SRO is entitled to immunity if the action is] central to effectuating the [SRO's] regulatory decisionmaking." *Id*. Just as allegations of fraud or irregularity about the manner in which an SRO reached a regulatory decision do not suffice to circumvent the doctrine of absolute immunity (*Sparta Surgical Corp.*, 159 F.3d at 1215; *DL Capital Group, LLC*, 409 F.3d at 98-99), so too an allegation that an SRO announced a regulatory decision in a manner that failed to inform all market participants simultaneously fails to move a claim outside the ambit of the SRO's delegated power and, thus, outside the scope of the SRO's regulatory immunity.

¶ 47    Plaintiff's allegations that CBOE and OCC announced the adjustment decision in a particular way in order to enhance their profits are irrelevant to the regulatory immunity analysis, which focuses instead on whether the announcement of a regulatory decision was in furtherance of their regulatory function. Clearly, CBOE and OCC's announcement of the IFN adjustment decision readily falls within the ambit of the quasi-governmental functions delegated to these SROs. Moreover, plaintiff's complaints about SROs hiding their misconduct behind the doctrine of regulatory immunity are unavailing because alternatives to damage suits against SROs exist as a means to redress the alleged wrongful conduct. Any misconduct here by CBOE and OCC may be redressed by the SEC, which retains formidable oversight power and is authorized to, among other things, suspend or revoke an SRO's registration. See 15 U.S.C. § 78s(g), (h). It is a matter for the SEC to decide whether CBOE and OCC's announcement was improper. There is no private right of action against an exchange for violation of its own rules. See *Spicer v. Chicago Board of Options Exchange, Inc.*, 977 F.2d 255, 259-61 (7th Cir. 1992). Although plaintiff could have pursued a cause of action against the defendants who allegedly received inside information from CBOE and OCC and traded on it, plaintiff chose not to pursue that remedy when plaintiff voluntarily dismissed its complaint against those defendants.

¶ 48    Plaintiff cites *Kundrat v. Chicago Board Options Exchange, Inc.*, No. 01 C 9456, 2002 WL 31017808 (N.D. Ill. Sept. 6, 2002), to support plaintiff's position that CBOE and OCC's behavior in the case before us was not regulatory in nature. The *Kundrat* plaintiffs alleged, *inter alia*, that the SRO defendants attempted to prevent the plaintiffs from earning substantial trading profits by imposing severe reporting requirements on the plaintiffs' clearing firms and circulated to clearing firms a blacklist letter, which allegedly falsely accused the plaintiffs of potential trading abuses. *Id*. at *9. The *Kundrat* court deferred ruling on a regulatory immunity argument and denied the defendant SROs' motion to dismiss with leave to reassert that argument later because the court thought it was unclear, at that stage of the proceeding, whether the defendant SROs were performing regulatory acts. *Id*.

¶ 49    Plaintiff's reliance on *Kundrat* is misplaced because there is no dispute in the instant case that CBOE and OCC's IFN adjustment was a regulatory act. Moreover, as discussed above, CBOE and OCC's announcement of the adjustment decision falls within the ambit of their

-13-

regulatory functions.

¶ 50    Plaintiff also cites *Opulent Fund, L.P. v. NASDAQ Stock Market, Inc.*, No. C-07-03683, 2007 WL 3010573 (N.D. Cal. Oct. 12, 2007), where the plaintiff alleged the SRO breached a duty owed to market professionals when it negligently miscalculated the price of its proprietary Nasdaq-100 index. *Id.* at *2. The court noted that the SRO created the proprietary index, encouraged investors to create derivative instruments based on the index's value, disseminated that information, and received profits from selling the index market data. *Id.* at *5. The court rejected the SRO's immunity argument concerning its pricing conduct, finding that the duty the SRO undertook to accurately calculate and disseminate an index price did not function to protect investors but, rather, functioned to create a market and increase trading. *Id.*

¶ 51    *Opulent Fund, L.P.*, however, is distinguishable from the case before this court. Here, CBOE and OCC's adjustment of the IFN strike price was regulatory in nature and served to protect investors by compensating for the fact that the extraordinary distribution declared by IFN would reduce the value of the underlying IFN shares. Moreover, as discussed above, CBOE and OCC's announcement of the adjustment decision falls within the ambit of their regulatory functions. Furthermore, the IFN was not CBOE's or OCC's proprietary product.

¶ 52    Because I would find that plaintiff's suit against CBOE and OCC cannot proceed due to their regulatory immunity, I do not address CBOE and OCC's alternative arguments to affirm the dismissal of the complaint based on plaintiff's failure to plead valid causes of action.

¶ 53    Finally, I would find that the trial court did not abuse its discretion in determining that it would have been futile to allow plaintiff to file its proposed amended complaint against CBOE and OCC. "The question of whether to grant or deny leave to amend a complaint is within the trial court's discretion, and the court's decision will not be reversed absent an abuse of that discretion." *Weidner v. Midcon Corp.*, 328 Ill. App. 3d 1056, 1059 (2002). "Leave to amend should generally be granted unless it is apparent that even after the amendment no cause of action can be stated." *Id.* The trial court properly concluded that any amendment to the complaint against CBOE and OCC would be futile because plaintiff could not plead around the doctrine of regulatory immunity. See *Flores v. Palmer Marketing, Inc.*, 361 Ill. App. 3d 172, 179 (2005).

¶ 54    Because CBOE and OCC are absolutely immune from the claims alleged in plaintiff's suit, I would affirm the judgment of the circuit court that granted CBOE and OCC's motion to dismiss plaintiff's complaint without leave to amend.